LAW OFFICE OF SANDRA D. PARKER
444 Madison Avenue, Suite 1710
New York, NY 10022
(212) 317-2883
Sandra D. Parker
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MAUVAREEN BEVERLEY,

                            Plaintiff,            ECF CASE

      -against-                        COMPLAINT AND JURY
                                                  DEMAND

NEW YORK CITY HEALTH AND
HOSPITALS CORP., MITCHELL
KATZ, Individually and as Chief Operating
Officer and President of New York City Health
and Hospitals Corp., STANLEY BREZENOFF,
Individually and as Interim Chief Operating
Officer and President of New York City Health
and Hospitals Corp., PLACHIKKAT V.
ANANTHARAM, Individually and as Chief
Financial Officer of New York City Health and
Hospitals Corp.,

                            Defendants.
-----------------------------------------------------------------x

      Plaintiff, Mauvareen Beverley, for her Complaint against the Defendants, respectfully alleges as follows:

JURISDICTION AND VENUE

      1.     Plaintiff Mauraveen Beverley (Beverley) brings this action for declaratory

judgment, injunctive relief and damages against the Defendants, for unlawful employment practices and employment discrimination, based on Beverley's race, age and gender, for retaliation and subjecting Beverley to a hostile work environment, pursuant to the New York City Human Rights Law, N.Y. Admin Code sec. 8-107 set seq. (NYCHRL), and to redress the deprivation under color of state law, the rights, privileges and immunities secured to Beverley, by the Fourteenth Amendment of the United States Constitution, pursuant to the Civil Rights Act of 1866 (as amended), 42 U.S.C. sec. 1981, the Civil Rights Act of 1871 (as amended), 42 U.S.C. sec. 1983.

2. The Defendants subjected Beverley to disparate and unequal treatment based on her race, gender and age.

3. The actions and conduct of Defendants had a disparate impact upon Beverly based her race, gender and age.

4. Jurisdiction over the subject matter of this Complaint is conferred on this Court pursuant to 28 U.S.C. sec. 1331, 28 U.S.C. sec. 1343, 42 U.S.C. sec. 1981, and 42 U.S.C. sec. 1983.  This Court's pendent jurisdiction is invoked pursuant to 28 U.S.C. 1367(a). Beverley further invokes this Court's jurisdiction pursuant to 28 U.S.C. sec. 2201 and 2202.

5. The venue of this action is properly placed in the Southern District of New York, pursuant to 28 U.S.C. sec. 1391(b).

## PARTIES

6      Beverley is an African American female citizen of the United States, over the age of sixty.

7.     Beginning in 2007 Beverley worked in various positions within the Defendant New York City Health and Hospitals Corp. (lHHC) organizational network, until in or abut January 2018, when Defendants wrongfully terminated her employment based on their animus directed against Beverley because of her race, age and gender.

8.     At all times relevant herein Beverley was an "employee" of the Defendants, within the meaning of the NYCHRL.

9.     At all times relevant herein, Defendants were Beverley's "employers" within the meaning of NYCHRL.

10.    Upon information and belief, the Defendant HHC at all times relevant herein, was and continues to be a public benefit corporation, which provides health care services to the New York City public, through a network of eleven acute care hospitals, and other health care facilities.

11.    Upon information and belief, HHC's principal office is located at 125 Worth Street, New York, NY 10013.

12.    Upon information and belief Defendant Mitchell Katz (Katz) is the President and Chief Operating Officer of Defendant HHC, assuming said position in or about January 2018.

13. As President and Chief Operating Officer of Defendant HHC, Defendant Katz makes decisions regarding the hiring and termination of employees, working for HHC, including Beverley.

14. Upon information and belief Defendant Katz participated in the decision to terminate Beverley's employment. Defendant Katz made the decision to deny Beverley's request to rescind her termination.

15. Upon information and belief at all times relevant herein Defendant Stanley Brezenoff (Brezenoff) was the Interim President and Chief Operating Officer of Defendant HHC.

16. As the Interim President and Chief Operating Officer of Defendant HHC, Defendant Brezenoff made decisions regarding the hiring and termination of employees, working for HHC, including Beverley.

17. Defendant Brezenoff participated in the decision to terminate Beverley's employment. Upon information and belief Brezenoff participated in the decision to deny Beverley's request to rescind her termination.

18. Upon information and belief, at all times relevant herein Defendant Plachikkat V. Anantharam (Anantharam) was the Chief Financial Officer of Defendant HHC.

19. As Chief Financial Officer of HHC, Defendant Anatharam made decisions regarding the hiring and termination of employees working for HHC, including Beverley.

Defendant Anathram participated in and was involved in the decision to terminate Beverley's employment. Upon information and belief, Defendant Anathram participated in the decision to deny Beverley's request to rescind her termination.

20. At all times relevant herein, Defendants made daily decisions regarding Beverley's employment, possessed and exercised the authority to hire Beverley and to terminate Beverley's employment, had the authority and exercised the authority to supervise and control Beverley's working conditions, had the power and exercised the power to determine Beverley's compensation, and had control over the conduct and activities which give rise to claims that are the subject of this Complaint.

21. Defendants exercised power and control and are the final policy makers with respect to the practices, policies and procedures maintained regarding their employees, including those that are the subject of this Complaint.

22. Defendants acted together in promulgating, enforcing and maintaining the practices and policies referred to and complained of herein.

23. At all times relevant herein, Defendants are and were responsible for the acts of their staff, supervisors and officers, who were acting within the scope of their employment and under the color of law, pursuant to a policy, custom and/or practice of gender, age and race discrimination, and in violation of an individual's right to equal protection, provided by the Fourteenth Amendment of the United States Constitution.

24. At all times relevant herein Defendants acted under color of law.

25. At all times relevant herein Defendants Katz, Brezenoff, and Anantharam acted within the scope of their employment.

## FACTS

26. Upon information and belief, Defendant HHC established and maintains the Equal Employment Opportunity Program and Affirmative Action Plan (EEO Plan), also known as Operating Procedure No. 20-32.

27. Upon information and belief, the EEO Plan established policies and procedures regarding among other things, the recruitment and retention of senior managers, officers and directors working for HHC, including Beverley.

28. Upon information and belief, Defendants Katz and Brezenoff are responsible for and accountable for implementation and enforcement of the policies and procedures set forth in the EEO Plan.

29. Upon information and belief, the EEO Plan requires Defendant Anathram and other employees working for Defendant HHC to adhere to its terms and provisions.

30. Among other things, the EEO Plan prohibits discrimination based on race, age and gender directed against applicants for employment with HHC and employees working for HHC, prohibits discriminatory personnel actions, and mandates a fair and prompt disposition of claims related to the applications of the policies set forth therein.

31. Beverley is a former employee of the Defendants, and a Medical Doctor. In

or about 1981 Beverley earned the M.D. Degree from the University of Buffalo School of Medicine.  In or about 1984 Beverley completed her internship and residency in Internal Medicine, at Harlem Hospital, one of the several hospitals within the HHC organizational network.

32. In or about 2007 Beverley began her employment with HHC, as an Associate Executive Director of Care Management at the Queens Health Network.   She held the position for approximately four years, until in or about 2011.

33. During her tenure as Associate Director of Care Management, Beverley performed her duties in an exemplary manner.

34. Beverley created, implemented  and oversaw numerous projects and initiates at the Queens Health Network, including the Care Management Program for Elmhurst Hospital and Queens Hospital, the first sickle cell support group at Queens Hospital, and an external appeals process to challenge inappropriate denials of reimbursement.

35. From in or about 2011 to in or about 2014, Beverley held the position of Deputy Executive Director, Care Management at Kings County Hospital.  As Deputy Executive Director, Beverley performed her duties in an exemplary manner.

36. Among the projects Beverley created, implemented and oversaw in her position of Deputy  Executive Director was a care management program.  Beverley also worked to  decrease from 30% to 18.7%, the 30-day re-admissions for congestive heart failure patients.

37. Beverly further initiated, implemented and oversaw other projects that increased revenues by $22 Million Dollars and that generated $5 Million Dollars in savings.

38. Beverley was a finalists in the National Competition for the John Q. Sherman Patient Engagement Award.

39. In or about 2015 Beverley began working in the position of Assistant Vice President, Physician Advisor in Central Office Finance/Managed Care. Beverley performed her duties in an exemplary manner.

40. At no time during Beverley's employment did Defendants state that her performance was in any manner deficient.

41. Beverley's duties included developing initiatives related to medical necessity denials and appeals, involving the eleven acute care hospitals within the HHC network.

42. Beverley developed and implement a medical necessity denial and appeal process, which resulted in recoupment of approximately $8 Million Dollars during her tenure, as Assistant Vice President, Physician Advisor.

43. Other initiatives, projects and programs Beverley oversaw, resulted in savings to Defendant HHC of $24 Million Dollars, and in increased revenues by more than $8.5 Million Dollars.

44. During her tenure as Assistant Vice President, Physician Advisor Beverley initially reported to Marlene Zurack, a Senior Vice President and the Chief Financial

Officer.

45.     Beginning in or about 2016 Beverley reported directly to Defendant Anathram.   Defendant Anathram supervised Beverley's performance and execution of her duties.

46.     Robert Melican (Melican), a male Caucasian employee worked in the unit to which Beverley was assigned.  During Beverley's tenure Melican held the position of Senior Director, which is a position lower than the Assistant Vice President position Beverley held.

47.     Upon information and belief, Melican is less than sixty years old.

48.     During interactions with Beverley, Melican treated her in an aggressive, threatening and belligerent manner.

49.     Melican further issued reports laden with errors, then falsely attributed the errors to Beverley.

50      Melican among other things, refused to provide Beverley with adequate notice regarding due dates for reports, projects and other data.

51.     Melican did not subject other senior managers to such treatment.

52.     Maxine Katz (Katz), a Caucasian employee in Beverley's unit treated Beverley in a demeaning and humiliating manner, by among other things, screaming and yelling at her in front of vendors and employees, including Defendant Anathram.

53.     Melican and Katz, with the approval and acquiescence of Defendant

Anathram marginalized Beverley, excluded her from meetings held with senior managers, and excluded her from meetings regarding projects on which she worked.

54. Melican and Katz did not subject other senior managers to the treatment to which they subjected Beverley.

55. Defendants, and in particular Defendant Anathram dismissed Beverley's numerous complaints regarding the above treatment, and failed to take action to address those complaints.

56. Defendants further denied Beverley a salary increase, while increasing the salary of other managers. Upon information and belief, Defendants increased Melican's salary, but denied Beverley a salary increase.

57. Defendants denied Beverley's requests for additional staff needed to complete project. Defendants instead increased the staff of other managers.

58. Following Beverley's numerous complaints regarding the above treatment, in or about August 2017, Defendants and in particular Defendant Anathram placed Beverley under the direct supervision of Melican.

59. From in or about August 2017 until her termination in or about January 2018, Defendants required Beverley to report to Melican, a junior staff member.

60. Defendant Anathram did not place other senior managers under the supervision of an employee holding a lower title and position, than the one held by those managers.

61. In addition to excluding Beverley from senior staff meetings, conferences

and huddles, in or about November 2017, Defendants and in particular Defendant Anatharam directed that Beverley stopped receiving emails and other communications exchanged among senior managers.

62. Approximately one month thereafter, on or about December 18, 2017 Defendants and in particular Defendant Anathram told Beverley she had two days to submit a letter of resignation.

63. Defendants subjected Beverley to the above treatment because of their discriminatory animus directed against Beverley because of race, age, gender and in retaliation for her complaints about their conduct.

64. The above treatment to which Defendants subjected Beverley violated the terms and provisions of the EEO Plan.

65. Beverley complained to Defendants and in particular Defendant Brezenoff, regarding the demand for her resignation and other discriminatory treatment. Defendants and in particular Defendant Brezenoff in violation of the EEO Plan, ignored her complaints.

66. In or about January 2018, Defendants terminated Beverley's employment.

67. Beverley complained to Defendants and in particular Defendant Katz, regarding her termination and other discriminatory treatment. Defendants and in particular Defendant Katz in violation of the EEO Plan, ignored her complaints.

68. Upon information and belief, following Beverley's termination Defendants promoted Melican and gave him a salary increase.

69. Upon information and belief, following Beverley's termination Melican assumed Beverley's responsibilities and duties.

70. Upon information and belief, following Beverley's termination, Defendants advertised for and hired new employees to perform the duties Beverley previously performed.

71. Despite her efforts, Beverley has not found comparable employment.

COUNT I AGAINST DEFENDANTS
KATZ BREZENOFF AND ANTHRAM
IN THEIR OFFICIAL CAPACITIES

72. Beverley repeats and realleges each and every allegation set forth in paragraphs 1 through 71 of this Complaint, with the same force and effect as if set forth herein.

73. Defendants Katz, Brezenoff and Anatharam were the final policy makers and/or decision makers who acted under color law with respect to the discriminatory treatment and decisions affecting Beverley's terms and conditions of employment.

74. At all times relevant herein, Defendants Katz, Brezenoff and Anatharam acted with in the scope of their employment.

75. Beverley has a constitutionally protected right of equal protection under the law, guaranteed through the Fourteenth Amendment of the United States Constitution, and made enforceable pursuant to 42 U.S.C. sec. 1983.

76. Defendants Katz, Brezenoff and Anatharam intentionally and wilfully violated Beverley's right of equal protection under the law, in violation of 42 U.S.C. sec.

1983.

77. Defendants Katz, Brezenoff and Anatharam subjected Beverley to the foregoing treatment because of her race.

78. Defendants Katz, Brezenoff and Anatharam denied Beverley equal protection of the law, and the full and equal benefits of all laws and proceedings for the security of her employment, because of Beverley's race, in violation of the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. sec. 1983.

79. As a proximate result of Defendants' conduct, Beverley has suffered and continues to suffer substantial losses, including the loss of past and future earnings, career advancement, and other employment benefits.

80. As a proximate result of Defendants' conduct, Beverley has suffered and continues to suffer impairment and damage to her good name and reputation.

81. As a proximate result of Defendants' conduct, Beverley has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

82. The conduct of the Defendants was outrageous and malicious, was intended to injure Beverley, and was done with reckless indifference to Beverley's protected civil rights, entitling Beverley to an award of punitive damages.

COUNT II AGAINST DEFENDANTS HHC,
AND KATZ, BREZENOFF AND ANATHARAM
IN THEIR OFFICIAL CAPACITIES

83. Beverley repeats and realleges each and every allegation set forth in paragraphs 1 through 71 and 73 through 78 of this Complaint, with the same force and effect as if set forth herein.

84. The discriminatory acts of which Beverley complains were done pursuant to a larger custom, policy or practice of discrimination maintained by Defendants in violation of 42 U.S.C. sec. 1983.

85. As a proximate result of defendants' actions, Beverley has suffered and continues to suffer substantial losses, including the loss of employment opportunities, and other employment benefits.

86. As a proximate result of Defendants' conduct, Beverley has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

COUNT III AGAINST DEFENDANTS
KATZ, BREZENOFF AND ANATHARAM
IN THEIR INDIVIDUAL CAPACITIES

87. Beverley repeats and realleges each and every allegation set forth in paragraphs 1 through 71 and 73 through 78 of this Complaint, with the same force and effect as if set forth herein.

88. Defendants Katz, Brezenoff and Anatharam subjected Beverley to

discriminatory treatment, based of her race and thereby deprived Beverley of her right to make and enforce contracts and to the full and equal benefits of all laws and proceedings for the security of her employment, in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. sec. 1981.

89. As a proximate result of Defendants' conduct, Beverley has suffered and continues to suffer substantial losses, including the loss of employment opportunities, and other employment benefits.

90. As a proximate result of Defendants' action, Beverley has suffered and continues to suffer impairment and damage to her good name and reputation.

91. As a proximate result of Defendants' actions, Beverley has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

92. The conduct of Defendants was outrageous and malicious, was intended to injure Beverley , and was done with a conscious disregard of Beverley's civil rights, entitling Beverley to an award of punitive damages.

COUNT IV AGAINST DEFENDANTS
HHC AND KATZ, BREZENOFF AND
ANATHARAM IN THEIR OFFICIAL
CAPACITY

93. Beverley repeats and realleges each and every allegation set forth in paragraphs 1 through 71 and 73 through 78 of this Complaint, with the same force and effect as if set forth herein.

94. Defendants subjected Beverley to disparate treatment because of her race, and forced her to work in a hostile environment.

95. By virtue of their actions, policies, employment practices and conduct directed against Beverley, Defendants deprived Beverley of her constitutional rights of equal protection under the law in violation of 42 U.S.C. sec. 1983.

96. Defendants' conduct was willful and intentional and caused the deprivation of Beverley's constitutional rights of equal protection of the law.

97. At all times relevant herein, Defendants acted under the color of state law in willfully and purposefully depriving Beverley of her constitutionally guaranteed rights.

98. As a proximate result of Defendants' discriminatory conduct, custom, practice or policy, Beverley has suffered and continues to suffer impairment and damage to her good name and reputation.

99. As a proximate result of Defendants' discriminatory conduct, custom, practice or policy, Beverley has suffered and continues to suffer severe lasting embarrassment, anxiety, humiliation, shame and anguish, and other incidental and consequential damages and expenses.

COUNT V AGAINST
DEFENDANT HHC

100. Beverley repeats and realleges each and every allegation set forth in paragraphs 1 through 71 and 73 through 78 of this Complaint, with the same force and effect as if set forth herein.

101.  Defendant HHC violated Beverley's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract. enjoyed by white citizens, in violation of 42 U.S.C. sec. 1981.

102.  Defendant's treatment, practices and policies directed toward Beverley, as set forth herein, denied Beverley the full and equal benefits of all laws and proceedings for the security of persons and property as enjoyed by white citizens, in violation of 42 U.S.C. sec. 1981.

103.  Defendant's intended to and deliberately discriminated against Beverley, because of her race.

104.  As a proximate result of Defendant's conduct, Beverley has suffered and continues to suffer substantial losses, including the loss of employment opportunities, and other employment benefits.

105.  As a proximate result of Defendant's actions, Beverley has suffered and continues to suffer impairment and damage to her good name and reputation.

106.  As a proximate result of Defendant's actions, Beverley has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

COUNT VI AGAINST DEFENDANTS
HHC AND KATZ, BREZENOFF AND
ANATHARAM IN THEIR OFFICIAL
<u>AND INDIVIDUAL CAPACITIES</u>

107.  Beverley repeats and realleges each and every allegation set forth in

paragraphs 1 through 71 and 73 through 78 of this Complaint, with the same force and effect as if set forth herein.

108.  Defendants' discriminatory conduct, which was based on Beverley's race, age and gender, violated NYC Admin. Code sec. 8-107 et seq.

109.  As a proximate result of Defendants' conduct, Beverley has suffered and continues to suffer substantial losses, including the loss of employment opportunities, and other employment benefits.

110.  As a proximate result of the foregoing, Beverley has suffered mental anguish, emotional distress and loss of enjoyment of life.  Beverley has incurred damages thereby.

111.  The conduct of Defendants was outrageous and malicious, was intended to injure Beverley, and was done with reckless indifference to Beverley's protected civil rights, entitling Beverley to an award of punitive damages.

WHEREFORE, Beverley prays that this Court grant judgment to her containing the following relief:

1.  A declaration that the acts and practices complained of herein are in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1983, and NYC Admin. Code sec. 8-107 et seq.

2.  An order prohibiting Defendants from continuing or maintaining the policy, practice and/or custom of denying job benefits and opportunities to employees on the basis of race, age and gender.

3. An award to Beverley of actual damages in an amount to be determined at trial for benefits and promotional opportunities.

4. An award of damages in an amount to be determined at trial to compensate Beverley for mental anguish, humiliation, embarrassment, and emotional injury.

5. An award of punitive damages in an amount to be determined at trial.

6. An order enjoining Defendants from engaging the wrongful acts and practices complained of herein.

7. An award of pre-judgment and post-judgment interest.

8. An award of reasonable attorney's fees and costs of this action.

9. An award of such other and further relief, as this Court may deem just and proper.

Pursuant to Fed. R. Civ. Proc. 38, Beverley demands a trial by jury of all issues of fact in this action.

Dated:   New York, New York
         August 31, 2018

                                        LAW OFFICE OF SANDRA D. PARKER

                                        By: /s/ Sandra D. Parker
                                            Sandra D. Parker
                                            444 Madison Avenue, Suite 1710
                                            New York, NY 10022
                                            (212) 317-2883
                                            Attorney for Plaintiff