UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUVAREEN BEVERLEY,

                Plaintiff,

– against –

NEW YORK CITY HEALTH AND HOSPITALS CORP., MITCHELL KATZ, *individually and in his official capacity as President and Chief Operating Officer of NYC Health and Hospitals Corp.*, STANLEY BREZENOFF, *individually and in his official capacity as Interim President and Chief Operating Officer of NYC Health and Hospitals Corp.*, *and* PLACHIKKAT ANANTHARAM, *individually and in his official capacity as Chief Financial Officer of NYC Health and Hospitals Corp.*,

                Defendants.

**OPINION & ORDER**

18 CV 8486 (ER)

Ramos, D.J.:

In this case, Mauvareen Beverley ("Beverley" or "Plaintiff"), a medical doctor and former Assistant Vice President, Physician Advisor in Finance/Managed Care for the New York City Health and Hospitals Corp. ("H+H"), brings discrimination and retaliation claims under federal and New York City law against H+H, and against three officers of H+H, Mitchell Katz ("Katz"), Stanley Brezenoff ("Brezenoff"), and Plachikkat Anantharam ("Anantharam") (collectively, "Defendants"). Beverley alleges that Defendants discriminated against her because of her "race, Caribbean descent, age, and gender," retaliated against her, and subjected her to a hostile work environment. She seeks, *inter alia*, a declaration that the acts and practices complained of are unlawful, an order prohibiting Defendants from continuing such practices, and damages with costs and interest. Defendants moved to dismiss the case on May 5, 2019. Doc. 17. For the reasons set forth below, the motion to dismiss is GRANTED.

I.  **FACTUAL BACKGROUND**

Beverley commenced this action on September 18, 2018.[1] Doc. 1. She is an African American woman of Caribbean descent who is over the age of 67. Beginning in 2007, Beverley worked in various positions within the H+H until January 2018, when Defendants allegedly terminated her employment based on discriminatory animus. As of 2015, Beverley held the position of Assistant Vice President, Physician Advisor in Finance/Managed Care.

Upon information and belief, at all times relevant herein, Brezenoff was the Interim President and Chief Executive Officer. Beginning in 2016, Anantharam was the Chief Financial Officer and Head of the Central Finance Office. Katz assumed his position as President and Chief Executive Office in January 2018, replacing Brezenoff. All were officers with authority over personnel decisions and policies at H+H, including hiring, firing, evaluating, and disciplining employees.

Specifically, Anantharam supervised a management staff that in addition to Beverley, included Christi Olson ("Olson"), Frederick Covino ("Covino"), Megan Meagher ("Meagher"), Maxine Katz ("Maxine Katz"),[2] and Robert Melican ("Melican"), all of whom are Caucasian. Covino is approximately fifty-four years old, Olson and Meagher are less than forty years old, and Melican is approximately forty years old. Covino, Olson, and Meagher held the positions of Assistant Vice President in Finance and Melican was Director before Anantharam promoted him to Assistant Vice President. Melican has a legal background, while Maxine Katz has a

---

[1] The facts alleged in the Amended Complaint are assumed to be true. Doc. 16; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks omitted)).

[2] Not to be confused with Defendant Mitchell Katz.

background in education.  Maxine Katz' age is not plead.  Lastly, Brenda Shultz is a Caucasian female approximately 40-years old who is an Assistant Vice President in H+H's Information Technology Department and is paid a "high salary" despite her allegedly incompetent performance.[3]  Doc. 16, 8.

### A. The Alleged Discrimination

Beverley alleges that H+H has a history of denying African Americans the opportunity of holding high ranking managerial positions, of not addressing African American employees' employment needs, and promoting non-African American employees who lack sufficient qualifications and/or experience, based on discriminatory animus.  Beverley claims that Anantharam gave preferential treatment to non-Caribbean employees and treated her with discriminatory animus.

On one occasion, Anantharam questioned Beverley about her Caribbean background and made a comment about his lack of affinity for the United States' "African American experience."  Another H+H Caribbean employee was also subject to disparaging remarks regarding his background[4] and subordinate Caucasian employees questioned his competence and abilities based on his Caribbean background.

During an unspecified time period, Anantharam stopped holding one-on-one meetings with Beverley and dismissed her requests to meet with him about her work.  He continued holding such meetings with Caucasian managers in Finance.  During staff meetings, Anantharam was allegedly receptive and responded positively to the concerns and ideas of younger, male, and

---

[3] These are the only allegations made concerning Schultz.

[4] Beverley does not identify the employee, the comments that were directed at him, or the date or circumstances of the comments.

non-African managers, but challenged, dismissed, and treated as unworthy, Beverley's ideas. Anantharam did not provide Beverley with the resources he provided other managers in Finance, such as staff, which she needed to adequately perform her job duties.

Additionally, although Beverley's initiatives resulted in savings of $24 million and increased revenue of $8 million, which allegedly went beyond the results and achievements of other managers working in Finance, she received no recognition for those achievements. "[I]nstead of praising or acknowledging Beverley's performance," Anantharam was dismissive and did not give her a raise or promotion. He only promoted and/or raised the salaries of non-African American employees of Caribbean descent.

### B. The Alleged Retaliation

Beverley filed a charge (the date is unknown) with the Equal Employment Opportunity Commission (the "EEOC"), alleging that Defendants had discriminated against her based on her race and Caribbean descent. Beverley alleged that when she complained to Anantharam regarding the foregoing discriminatory treatment, he dismissed her complaints. Beginning in August 2017, Anantharam excluded Beverley from senior staff meetings and conferences that other Assistant Vice Presidents, Olson and Meagher, attended. He also directed two Caucasian employees, Melican and Maxine Katz, with different professional backgrounds than Beverley, to oversee her work. Allegedly, their only qualifications to oversee Beverley's work projects were that they were both Caucasian and one was a male, Melican, substantially younger than Beverley. At the time, Melican, held the position of Director, which is below that of Assistant Vice President. Maxine Katz's age is unknown.

Melican and Maxine Katz allegedly submitted reports laden with errors and presented it as Beverley's work, excluded her from meetings regarding projects she initiated, and attempted

4

to pass off her work as their own. Anantharam also gave salary raises to Caucasian employees holding positions they were not qualified for and/or who were allegedly performing poorly, including Covino, Melican, Olson and Meagher.

In or about 2017, the Finance department was directed to conduct performance evaluations of its management employees, but Defendants did not conduct an evaluation of Beverley by the deadline or at any time during her tenure. In November 2017, Anantharam cut off all of Beverley's communications with the other managers in Finance by directing her to, "stop receiving emails and other communications" exchanged among senior managers. Approximately, one month later, on December 18, 2017, Anantharam told Beverley she had two days to submit a letter of resignation. He did not point to any poor performance or deficiency in her performance as the reasons for his conduct. Finally, in January 2018, Defendants terminated Beverley's employment. Beverley complained to Katz about the termination and other discriminatory treatment and he ignored her complaints.

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy the pleading standard under Fed. R. Civ. Pro. 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a

5

defendant has acted unlawfully." *Id*.

## III. DISCUSSION

### A. Section 1981 Claims

Beverley asserted a discrimination claim pursuant to 42 U.S.C. § 1981 against H+H and three employees in their individual and official capacities. Beverley asserts that courts in this Circuit have permitted plaintiffs to pursue discrimination claims under § 1981 against municipal and state employees in their individual capacities. Doc. 22, 26 (collecting cases). However, the cases she cites pre-date the Second Circuit's decision in *Duplan v. City of New York*, 888 F.3d 612, 619–21 (2d Cir. 2018), which joined nine other Circuit courts in holding that "§ 1981 does not provide a separate private right of action against state actors."

When the defendant is a state actor, 42 U.S.C. § 1983 is the exclusive remedy for racial discrimination, and thus § 1981 does not provide independent federal damages for racial discrimination by local governmental entities. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731, 733 (1989). "The Supreme Court's holding in *Jett* has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities who are also state actors." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019).

Here, H+H operates the public hospitals and clinics in New York City, making Defendants state actors. Municipal employees, such as the individual Defendants in this case, are considered state actors. *Id.* "Thus, 'to the extent [Plaintiff] seeks to vindicate any independent rights under 42 U.S.C. § 1981, [s]he must do so via claims under § 1983.'" *Martinez v. Santamaria*, 2015 U.S. Dist. LEXIS 90901, *11-12 (S.D.N.Y. July 8, 2015) (citation omitted). Accordingly, Beverley's claims pursuant to §1981 are dismissed.

### B. Section 1983 Claims

Beverley alleges that Defendants discriminated against her on the basis of her race and ethnicity in violation of 42 U.S.C. § 1983, because she was not given a raise or promoted, she was not allowed to attend one-on-one meetings, her colleagues oversaw her work, and her employment was terminated. She also claims that another employee, an African American man, was at some point subjected to disparaging remarks about his Caribbean background by some unnamed "subordinate Caucasian employees." Ultimately, Beverley's claims fail because she has not sufficiently pleaded a causal link between her race and national origin and the alleged adverse employment actions.

When alleging employment discrimination under § 1983, a plaintiff must allege the violation of a right secured by the United States laws and Constitution, by persons acting under color of state law. *Vega v. Hempstead Union Free School District*, 801 F. 3d. 72, 87–88 (2d Cir. 2015) (citing *Feingold v. New York*, 366 F. 3d 138, 159 (2d Cir. 2004)). Once a plaintiff has met the "color of law requirement," she must plead facts that enable the court to "'connect the dots' between the adverse employment action and membership in a protected class." *Ahmed v. Gateway Group One*, 2012 U.S. Dist. LEXIS 76528, at *5 (E.D.N.Y. May 31, 2012) (citation omitted).

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015), quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009). Notably, the Second Circuit has held that the

"relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

Anantharam allegedly questioned Beverley about her Caribbean background and made a comment about his "lack of affinity for the United States 'African-American experience.'" Doc. 16. Beverley does not show she suffered adverse employment actions as a result of this comment. First, this comment is insufficient in itself to satisfy a discrimination claim. *See Rivera v. Brooklyn Hosp. Med. Ctr.*, 28 F. Supp. 3d 159, 163 (E.D.N.Y. 2014) (dismissing hostile work environment claim where plaintiff only alleged one remark in which coworker referred to his ethnicity). A stray remark, standing alone, will not support a discrimination or hostile work environment claim. *Id.* (citing *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir.2010)). It also does not meet the hostile work environment standard of harassment of such quality or quantity that a reasonable employee would find her conditions of employment altered for the worse. *Drew v. Plaza Constructions Corp.*, 688 F. Supp. 2d 270, 280 (S.D.N.Y. 2010).

Additionally, while Beverley alleges that other employees who were non-African American of Caribbean descent were promoted or given raises, she does not plead sufficient details that would show they were appropriate comparators that go beyond conclusory statements. Doc. 29, 6. *Kunik v. New York City Dep't of Educ.*, No. 15-CV-9512 (VSB), 2020 WL 508897, at *9 (S.D.N.Y. Jan. 31, 2020) (holding that by not pleading information on each comparator's qualifications or workload, plaintiff failed to show comparators were similarly situated).

8

A plaintiff relying on a disparate treatment claims must show evidence that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself. *Wegmann v. Young Adult Inst., Inc.*, 2016 U.S. Dist. LEXIS 26674, *30 (S.D.N.Y. Mar. 2, 2016). Employment characteristics that can support a finding that two employees are similarly situated include education, seniority, performance, and specific work duties. *Mohan v. City of N.Y.*, 2018 U.S. Dist. LEXIS 130933, at *31 (S.D.N.Y. Aug. 3, 2018). When a plaintiff does not plead facts that would permit a court to infer that she was similarly situated in all material respects to her coworkers, the case must be dismissed. *Eng v. City of N.Y.*, 2016 U.S. Dist. LEXIS 22569, *7–8 (S.D.N.Y. Feb. 19, 2016).

The Complaint references managers who Beverley claims to be comparators, such as Covino, Melican, and Maxine Katz. Doc. 16. However, Beverley acknowledges that they had different responsibilities, specializations, and educational backgrounds. Docs. 16, 22. For example, Covino worked on "budget matters" and at the time held the position of Director, which was below Beverley's position of Assistant Vice President; Melican had a "legal background" but his job responsibilities are unspecified; and Maxine Katz had a "background in education" but her job responsibilities are unspecified. *Id.* at 7, 18. Additionally, Melican and Maxine Katz did not have "the technical expertise, such as the expertise of a clinician that Beverley possessed, to work on the medical necessity projects." *Id.* at 18. This statement undermines her assertion that they were her comparators. Doc. 22, 7. There are no allegations as to what role Olson and Meagher performed.

Beverley also does not plead that she ever sought a promotion or raise and was denied. Second Circuit case law provides that a failure to promote may constitute an adverse employment action, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), but in order to state

such a claim, a plaintiff must show that she "applied for a position and was rejected," *Sethi v. Narod*, 12 F. Supp. 3d 505, 525 (E.D.N.Y. 2014) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004)), a factual allegation that is wholly lacking here. *See Semeraro v. Woodner Co.*, 2018 U.S. Dist. LEXIS 110566, at *9 (S.D.N.Y. June 29, 2018) (Ramos, J.) (dismissing claim where plaintiff was "passed for a promotion" when he did not apply for promotion).

As to the other allegations, regarding being excluded from meetings and supervised by other employees, courts have ruled that such allegations do not constitute adverse employment actions. *Williams v. City of N.Y.*, 2012 U.S. Dist. LEXIS 112482, at *14 (S.D.N.Y. Aug. 8, 2012) (excessive scrutiny and close monitoring not adverse employment actions); *see also MacAlister v. Millenium Hotels & Resorts*, 2018 U.S. Dist. LEXIS 191775, at *18 (S.D.N.Y. Nov. 8, 2018) (Ramos, J.) ("similar to adverse employment actions, being wrongly excluded from meetings, being excessively criticized, gossip about the plaintiff, refusing training, reducing job responsibilities, and changes in the office space generally do not constitute hostile work environments").

To the extent that Beverley alleges a claim of retaliation, she does not assert it as a separate count but hints at it when she says Defendants took "retaliatory action against her for complaining about their discriminatory conduct." Beverley complained to Anantharam about her allegedly discriminatory treatment, to Brezenoff about the demand for her resignation and other discriminatory treatment, and to Katz regarding her termination in January 2018 and other discriminatory treatment. Doc. 16, 20, 24. This claim also fails as because Beverley provided no factual support for it. While an informal complaint to a supervisor constitutes protected activity, *Morris v. David Lerner Associates*, 680 F. Supp. 2d 430, 442 (E.D.N.Y. 2010), Beverley does

such a claim, a plaintiff must show that she "applied for a position and was rejected," *Sethi v. Narod*, 12 F. Supp. 3d 505, 525 (E.D.N.Y. 2014) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004)), a factual allegation that is wholly lacking here. *See Semeraro v. Woodner Co.*, 2018 U.S. Dist. LEXIS 110566, at *9 (S.D.N.Y. June 29, 2018) (Ramos, J.) (dismissing claim where plaintiff was "passed for a promotion" when he did not apply for promotion).

As to the other allegations, regarding being excluded from meetings and supervised by other employees, courts have ruled that such allegations do not constitute adverse employment actions. *Williams v. City of N.Y.*, 2012 U.S. Dist. LEXIS 112482, at *14 (S.D.N.Y. Aug. 8, 2012) (excessive scrutiny and close monitoring not adverse employment actions); *see also MacAlister v. Millenium Hotels & Resorts*, 2018 U.S. Dist. LEXIS 191775, at *18 (S.D.N.Y. Nov. 8, 2018) (Ramos, J.) ("similar to adverse employment actions, being wrongly excluded from meetings, being excessively criticized, gossip about the plaintiff, refusing training, reducing job responsibilities, and changes in the office space generally do not constitute hostile work environments").

To the extent that Beverley alleges a claim of retaliation, she does not assert it as a separate count but hints at it when she says Defendants took "retaliatory action against her for complaining about their discriminatory conduct." Beverley complained to Anantharam about her allegedly discriminatory treatment, to Brezenoff about the demand for her resignation and other discriminatory treatment, and to Katz regarding her termination in January 2018 and other discriminatory treatment. Doc. 16, 20, 24. This claim also fails as because Beverley provided no factual support for it. While an informal complaint to a supervisor constitutes protected activity, *Morris v. David Lerner Associates*, 680 F. Supp. 2d 430, 442 (E.D.N.Y. 2010), Beverley does

not allege when she made these complaints nor the substance of the conversations. Thus, the Court cannot properly evaluate the temporal proximity of the allegations.

Lastly, her entire discrimination claim is based on a single stray remark, on an unspecified date, where Anantharam referenced her national origin. No facts support a conclusion that Anantharam assigned other coworkers to supervise Beverley's work, barred her from attending management staff meetings, or terminated her employment because she complained of discrimination on the basis of her race or national origin. *See* Doc. 22, 23. Thus, Beverley has not nudged her claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570.

### C. NYCHRL Claims

Beverley also alleges age and gender discrimination based on the NYCHRL. It is well established that the NYCHRL is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y. 3d, 472, 477–78 (2011). According to Beverley, a plaintiff claiming disparate treatment under the NYCHRL "need only plead that she was treated less well than other employees outside of her protected class." Doc. 22, 27 (citing *Mihalik v. Credit Agricole Cheuverux North America, Inc.*,715 F. 3d 102, 110 (2d Cir. 2013)). However, she misstates the standard set out in *Mihalik*, which actually requires that "to establish gender discrimination under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees *because of* her gender." *Id.* (emphasis added).

Beverley's age and gender discrimination claims have no factual support in the Amended Complaint. She does not allege any remarks based on these characteristics. Furthermore, her references to age or gender differentiation are vague, i.e., when she states Katz, Brezenoff, and Anantharam hired four Caucasian male employees for upper management positions who were

substantially younger than her; however, she provides no details like when they were hired, for what roles, and with what qualifications. Doc. 16, 10. The promotions she references were to the same position that she held, Assistant Vice President. Thus, Beverley's thin arguments do not satisfy the NYCHRL standard.

### D. *Monell* Claim

To the extent that Beverley alleges a *Monell* claim, she does so insufficiently. Beverley states that the "discriminatory acts of which Beverly complains were done pursuant to a larger custom, policy or practice of discrimination maintained by defendants." Doc. 16. *See Monell v. Dep't of Sc. Servs.*, 436 U.S. 658, 694 (1978). A policy, practice, or custom is an essential element of a *Monell* claim under § 1983 claim. *Id.* at 658. "The plaintiff must … demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Moreover, a municipality is not liable under § 1983 where no constitutional violation has occurred. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Here, Beverley does not allege sufficient facts to support a *Monell* claim, for example, by showing that a policy of H+H caused the alleged deprivation of her constitutional rights. Doc. 18, 23. Instead she argues that decisions taken by alleged municipal policymakers Katz, Brezenoff, and Anantharam exposes the municipality to liability. *Stern v. City of New York*, 2015 WL 918754, at *3 (S.D.N.Y. Mar. 3, 2015) ("decision by a municipal policymaker on even a 'single occasion' may expose the municipality to Section 1983 liability") (citation omitted). *Inter alia*, she claims that H+H has a history of denying African Americans high ranking

managerial positions and promotions with corresponding salaries and of ignoring the poor performance of non-African American employees in these positions. Doc. 22, 24–25. Allegedly, as a result of these policies and practices, Beverley was subjected to discriminatory treatment. *Id.* at 26.

However, the Amended Complaint did not contain this allegation and Beverley did not support her claim that Katz, Brezenoff, and Anantharam instituted policies that give rise to *Monell* liability. *See Addo v. N.Y. Health & Hosps. Corp.*, 2017 U.S. Dist. LEXIS 176916, at *27 (S.D.N.Y. Oct. 25, 2017) (dismissing *Monell* claims where plaintiff failed to show that her supervisors were final policy makers such that their actions can result in municipal liability). "The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Snall v. City of New York*, 2000 WL 1847664 (Table), at * 4 (2d Cir. 2000) (citation omitted).

Beverley's conclusory allegations that H+H had a pattern of discrimination against African American employees fail because she does not provide details on these allegations. Additionally, she did not specifically plead that she or anyone else who was a non-African American employee of Caribbean descent sought a promotion higher than her position.

## IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to dismiss.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 17, and close the case.

It is SO ORDERED.

Dated:    March 30, 2020
          New York, New York

_____
Edgardo Ramos, U.S.D.J.