18-CV-08486 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUVAREEN BEVERLEY,

Plaintiff,

- against -

NEW YORK HEALTH AND HOSPITALS CORP.,
MITCHELL KATZ, Individually and as Chief Operating
Officer and President of New York City Health and
Hospitals Corp., STANLEY BREZENOFF, Individually
and as Interim Chief Operating Officer and President of
New York City Health and Hospitals Corp.,
PLACHIKKAT V. ANANTHARAM, individually and as
Chief Financial Officer of New York City Health and
Hospitals Corp.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO
## FILE A SECOND AMENDED COMPLAINT

### *GEORGIA M. PESTANA*
*Acting Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Donald C. Sullivan*
*Tel: (212)356-2433*
*Matter No. 2018-075268*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

    A. Plaintiff Keeps Changing the Alleged Basis of
       Discrimination ............................................................................. 3

    B. Summary Regarding Plaintiff and the Individual
       Defendants .................................................................................... 4

    C. Plaintiff's Central Office Finance Position and
       Alleged Comparators .................................................................. 5

    D. Alleged Discrimination............................................................... 6

       1. *Allegations of Discrimination Against
          African Americans* ............................................................ 6

       2. *Alleged Discriminatory Remarks*.......................................... 7

       3. *Alleged Discriminatory Treatment* ...................................... 8

          a. *Alleged Diminution of Authority Already
             Resolved by the Court* .................................................. 8

          b. *Additional Allegations Already Resolved* ................... 10

          c. *Alleged Failure to be Promoted and/or
             to Receive Raise* ............................................................ 10

    E. Alleged Retaliation .................................................................. 12

    F. Plaintiff's Termination and Alleged
       Replacement .............................................................................. 13

ARGUMENT

    POINT I

       PLAINTIFF FAILS TO STATE A CLAIM OF
       MONELL LIABILTY ................................................................ 14

**Page**

A.  This Court Has Already Dismissed This Claim and Plaintiff's SAC Offers No New Supporting Allegations................................................................15

   1.  The Prior Dismissal and the Repeated Allegations..............................................................15

   2.  Conclusory Allegations Regarding Alleged Policymakers.................................................16

B.  The Law of the Case Doctrine ................................16

C.  Independent of the Court's Prior Decision, Plaintiff's Monell Claim Fails ................................17

D.  Any Monell Claims of National Origin and Age Discrimination, as Well as Retaliation, Had They Been Pled, Would Fail......................................18

E.  Any Monell Claims That Can Be Read Into the SAC Fail ................................................................19

POINT II

   PLAINTIFF FAILS TO STATE A CLAIM OF DISCRIMINATION OR OF HOSTILE WORK ENVIRONMENT ................................................................19

A.  Discrimination Claims Should Be Dismissed.........................19

   1.  Repeated Allegations ........................................20

   2.  Modified, But Still Insufficient, Claims ............................21

   3.  CHRL Claims of Discrimination Fail................................26

B.  Hostile Work Environment Claims Fail ................................26

POINT III

   PLAINTIFF'S RETALIATION CLAIMS FAIL ..........................27

CONCLUSION................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Acosta v. City of NY,
    2012 U.S. Dist. LEXIS 60460 (S.D.N.Y. Apr. 26, 2012) ............................20

Alexander v. Bd. of Educ.,
    648 F. App'x. 118 [2d Cir. 2016] ..............................................28

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009)...............................................20, 22, 25

Aspilaire v. Wyeth Pharms., Inc.,
    612 F. Supp. 2d 289 (S.D.N.Y. 2009) ...........................................28

Barounis v. N.Y.C. Police Dep't.,
    2012 U.S. Dist. LEXIS 176477 (S.D.N.Y. Dec. 12, 2012) ........................22

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...............................................20, 22, 25

Bermudez v. The City of New York,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011) ...........................................20

Bermudez v. City of NY,
    2015 U.S. Dist. LEXIS 43257 (S.D.N.Y. Mar. 31, 2015) ..........................16

Beverley v. N.Y. City Heath & Hosps. Corp.,
    2020 U.S. Dist. LEXIS 55946 (S.D.N.Y. Mar. 30, 2020),
    reconsideration denied, request denied by, without prejudice,
    Beverley v. N.Y. City Health & Hosps. Corp.,
    2020 U.S. Dist. LEXIS 176741 (S.D.N.Y. Sept. 25, 2020),
    vacated by, remanded by, decision reached on appeal by, in part,
    Beverley v. N.Y. City Health & Hosps. Corp.,
    2021 U.S. App. LEXIS 11139
    (2d Cir. Apr. 19, 2021) .................4, 7, 9, 10, 11, 12, 15, 16, 20, 21, 22, 23, 24, 25, 26

D'Amore v. City of N.Y.,
    2019 U.S. Dist. LEXIS 104533 (E.D.N.Y. June 21, 2019)
    aff'd, D'Amore v. City of NY, 807 F. App'x. 140 (2d Cir. 2020)..............................28

Davis v. City of N.Y.,
    228 F. Supp. 2d 327 (S.D.N.Y. 2002) ...........................................19

DiFalco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010) ...................................................3

| Cases | Pages |
|---|---|

DiLaura v. Power Auth. of N.Y.,
    982 F.2d 73 (2d Cir. 1992) ............................................................................ 16, 21

Elliot v. British Tourist Auth.,
    172 F. Supp. 2d 395 (S.D.N.Y. 2001),  aff'd,
    40 F. App'x. 629 (2d Cir. Jul. 16, 2002) ........................................................... 24

Engstrom v. Elan Corp., PLC,
    2011 U.S. Dist. LEXIS 120167 (S.D.N.Y. Oct. 18, 2011) .................................... 3

Ezekwo v. N.Y.C. Health & Hosps. Corp.,
    940 F.2d 775 (2d Cir. 1991) ............................................................................... 28

Fleming v. MaxMara USA Inc.,
    371 F. App'x. 115 (2d Cir. 2010) ........................................................................ 26

Franchino v. Terrence Cardinal Cooke Health Care Ctr., Inc.,
    692 F. App'x. 39 (2d Cir. 2017) .......................................................................... 24

Grant v. County of Erie,
    542 F. App'x. 21 (2d Cir. 2013) .......................................................................... 23

Krug v. Maricopa County Superior Ct.,
    2014 U.S. Dist. LEXIS 170854 (D. Ariz. Dec. 10, 2014),
    aff'd in relevant part, vacated and remanded in part,
    674 F. App'x. 652 (9th Cir. 2017) ...................................................................... 25

Little v. New York,
    1998 U.S. Dist. LEXIS 21797 (E.D.N.Y. Jun. 8, 1998), aff'd, 1999
    U.S. App. LEXIS 7768 (2d Cir. Apr. 14, 1999) .................................................. 25

Littlejohn v. City of New York,
    795 F.2d 297 (2d Cir. 2015) ............................................................................... 24

Marcus v. Leviton Mfg. Co.,
    661 F. App'x 29 (2d Cir. 2016) ........................................................................... 24

Mansaras v. Kraus Sec. Sys.,
    2020 U.S. Dist. LEXIS 9802 (S.D.N.Y. Jan. 19, 2021) ...................................... 25

McDonnell-Douglas Corp. v. Green,
    411 U.S. 792 (1973) ........................................................................................... 20

Monell v. Dept. of Social Servs.,
    436 U.S. 658 (1978) ...................................................................................... 14, 18

**Cases**                                                                                                  **Pages**

Oklahoma City v. Tuttle, 471 U.S. 808 (1985),
        aff'd, 75 F. App'x. 827 (2d Cir. 2003) ......................................................................19

Perez-Dickson v. Bridgeport Bd. of Educ.,
        801 F. App'x. 811 (2d Cir. 2020) .............................................................................28

Rivera v. Bd. of Educ.,
        2020 U.S. Dist. LEXIS 239633 (S.D.N.Y. Dec. 21, 2020) ..............................3, 17, 19

Roe v. City of Waterbury,
        542 F.3d 31 (2d Cir. 2008) ......................................................................................17

Rosenfeld v. Lenich,
        370 F. Supp. 3d 335 (E.D.N.Y. 2019) .....................................................................17

Stern v. City of New York,
        2015 U.S. Dist. LEXIS 25667 (S.D.N.Y. Mar. 3, 2015) ...........................................17

Zimmerman v. Associates First Capital Corp.,
        251 F.3d 376 (2d Cir. 2001) ....................................................................................24

**Statutes**

42 U.S.C. § 1983 ..................................................................................................1, 14, 20

N.Y.C. Admin. Code § 8-107 et seq. ..............................................................................1

Rule 12(b)(6) ..................................................................................................................3

## PRELIMINARY STATEMENT

In her proposed Second Amended Complaint, Dkt. No. 52-1 ("proposed SAC" or "SAC"), Plaintiff Mauvareen Beverley ("Plaintiff") purports to bring claims against her former employer, the New York City Health and Hospitals Corporation ("H+H") and individual defendants Mitchell Katz, Stanley Brezenoff, and Plachikkat Anantharam (collectively with H+H, "defendants"). For the reasons set forth herein, defendants respectfully urge this Court to deny plaintiff leave to replead because the proposed SAC fails to state a claim. Defendants also respectfully request that dismissal be with prejudice, because plaintiff has been given multiple opportunities to amend.

Plaintiff alleges age (born in 1952), race ("African American"), and national origin ("citizen of the United States . . . of Caribbean descent") discrimination and retaliation under the Fourteenth Amendment, enforceable under 42 U.S.C. § 1983, and the New York City Human Rights Law, codified at N.Y.C. Admin. Code § 8-107 et seq. ("CHRL"), and alleges a hostile work environment under the CHRL. She claims this discrimination culminated in her termination in January 2018. Plaintiff further contends that defendants, pursuant to "their policy" discriminate against African-Americans.

The procedural history of this case shows that in response to a pre-motion letter regarding a potential motion for judgment on the pleadings, plaintiff filed her First Amended Complaint ("FAC"). The Court later dismissed the FAC because plaintiff had not pled facts showing an inference of discriminatory animus, and because many of the acts she complained of were not adverse employment actions. The Court dismissed the retaliation claims in the absence of sufficient information about the content and dates of her alleged complaints. The Court held that plaintiff's claims were conclusory, including her claims of municipal liability for discrimination against African-Americans.

Plaintiff moved for reconsideration, which the Court denied. At the same time, plaintiff appealed the motion to dismiss decision. The Second Circuit remanded after noting that the original dismissal had been without prejudice.

Plaintiff now raises virtually identical claims to those previously dismissed by this Court. For example, plaintiff once again alleges that H+H discriminates, as a matter of policy, against African Americans in both hiring and promotion. She provides no new supporting allegations, notwithstanding the Court's decision that she failed to sufficiently support this claim in the FAC. Similarly, plaintiff once again relies on alleged comments that this Court has already specifically held are insufficient to establish discriminatory animus. Moreover, plaintiff once again argues that defendants precluded her from meetings, failed to support her comments at other meetings, and required her to report to someone who had a lower job title – all of which this Court has previously held were not adverse employment actions. Both the established caselaw, and the law of the case doctrine, precludes plaintiff from relitigating these claims.

In a handful of instances, plaintiff has provided some additional allegations, but these are insufficient to state a claim. For example, plaintiff now contends that some of her alleged comparators obtained promotions. Plaintiff still, however, fails to point to appropriate comparators, and fails to indicate whether she sought these promotions. Similarly, plaintiff yet again fails to provide necessary information about the substance of her purported complaints, which, yet again, requires dismissal of her retaliation claims. Moreover, although plaintiff declined to provide it to the Court, a letter she sent to defendants, and which the Court may consider on this motion because it was explicitly

referenced in the SAC, eviscerates her retaliation claims because it shows her underlying complaints failed to even allege discriminatory animus or conduct.

In sum, the SAC suffers from the same deficiencies as plaintiff's prior filings and fails under Rule 12(b)(6). Because plaintiff has already had multiple opportunities to amend, defendants respectfully assert that this dismissal should be with prejudice.

## STATEMENT OF FACTS[1]

### A.    Plaintiff Keeps Changing the Alleged Basis of Discrimination

Plaintiff self-identifies as "an African American female citizen of the United States . . . . [who] was born in 1952, . . . and is of Caribbean descent." SAC, ¶¶ 7-8. Plaintiff's original Complaint alleged she had been discriminated against on the basis of her "race, age, and gender," as well as retaliated against and subjected to a hostile work environment. Dkt. No. 1, Complaint ("Compl."), ¶ 1. Defendants requested to file a motion for judgment on the pleadings, because, among other flaws, "plaintiff [did] not cite a single remark by a defendant implicating her race, age, or gender" – her then-current theories of discriminatory animus. See Dkt. No. 11, at 2-3.

In response, plaintiff filed her First Amended Complaint ("FAC"). See March 15, 2019 Minute Entry. The FAC added the alleged basis of "Caribbean descent" discrimination to plaintiff's claims, and the FAC also alleged retaliation and hostile work

---

[1] This Statement of Facts is drawn from the allegations in the SAC. Although the well-pled allegations are presumed to be true, the legal conclusions proffered are not entitled to a presumption of truth. Rivera v. Bd. of Educ., 2020 U.S. Dist. LEXIS 239633, *9 (S.D.N.Y. Dec. 21, 2020). The Statement of Facts is supplemented with references to previous filings and decisions in this case, and the Court may take judicial notice of that material. See Engstrom v. Elan Corp., PLC, 2011 U.S. Dist. LEXIS 120167, at *2, n. 4 (S.D.N.Y. Oct. 18, 2011). In addition, the Statement of Facts is supplemented with references to the single document annexed to the supporting Declaration of Assistant Corporation Counsel Donald C. Sullivan, July 2, 2021 ("Sullivan Decl."). Plaintiff specifically referenced this document in the SAC and "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider [inter alia] . . . documents incorporated by reference in the complaint." DiFalco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

environment.  See Beverley v. N.Y. City Heath & Hosps. Corp., 2020 U.S. Dist. LEXIS

55946, *2 (S.D.N.Y. Mar. 30, 2020) ("Beverley I (MTD Dec.)"), reconsideration denied,

request denied by, without prejudice, Beverley v. N.Y. City Health & Hosps. Corp., 2020

U.S. Dist. LEXIS 176741 (S.D.N.Y. Sept. 25, 2020) ("Beverley II (Recon. Dec.)"),

vacated by, remanded by, decision reached on appeal by, in part, Beverley v. N.Y. City

Health & Hosps. Corp., 2021 U.S. App. LEXIS 11139 (2d Cir. Apr. 19, 2021).

The proposed SAC again changes plaintiff's theory, because she now abandons

her gender discrimination claims, and contends she was mistreated on the basis of "race,

age and Caribbean descent."  Compare SAC, ¶¶ 3, 4 with Compl., ¶ 1 and Beverley I

(MTD Dec.), at 2020 U.S. Dist. LEXIS 55946, *2.

**B.    Summary Regarding Plaintiff and the Individual Defendants**

Plaintiff received her Doctor of Medicine degree from the University of Buffalo

School of Medicine in or about 1981.  SAC, ¶ 20.  In 1984, plaintiff completed her

internship and residency at Harlem Hospital, a hospital within H+H.  SAC, ¶ 21.  The

SAC is silent as to where plaintiff worked between 1984 and 2007, but notes that plaintiff

"worked in various positions within" H+H, beginning in 2007.  SAC, ¶ 9.  In 2007, for

H+H, plaintiff worked "as an Associate Executive Director of Care Management."  SAC,

¶ 31.  In 2011, plaintiff, whose title change indicates she was promoted, became "Deputy

Executive Director, Care Management," at another H+H facility.  See SAC, ¶ 32.  In

2015, plaintiff was again promoted to "Central Office Finance of H+H," see SAC, ¶¶ 33,

43, 48 where she "held the position of Assistant Vice President, Physician Advisor in

Finance/Managed Care," Beverley I (MTD Dec.), at *2.  See also SAC, ¶ 37 (director is

below the position of assistant vice president ("AVP")).  Plaintiff acknowledges that the

AVP position she held was a "high ranking managerial position."  SAC, ¶ 175.

4

The SAC declares that in or about 2016, defendant Plachikkat Anantharam ("Anantharam") became Chief Financial Officer and the "head of the Central Office Finance of H+H." SAC, ¶ 16. Prior to January 2018, plaintiff alleges, defendants Stanley Brezenoff ("Brezenoff") was Interim President and Chief Executive Officer of H+H, and defendant Michael Katz ("defendant Katz") became President and Chief Executive Officer of H+H in January 2018. SAC, ¶¶ 15, 14.

Plaintiff also claims that each of the three individual defendants "were the final policy makers and/or decision makers . . . with respect to the discriminatory treatment and decisions affecting [her] terms and conditions of employment." SAC, ¶ 204. Plaintiff is silent as to how she reached these conclusions. See SAC, ¶ 204. Plaintiff made a similar allegation in the original Complaint, and in the FAC, when she declared that each individual defendant participated in the decision to terminate her employment. Compl., Dkt. No. 1, at ¶¶ 14, 17, 19; FAC, ¶¶ 63, 66, 69.

## C. Plaintiff's Central Office Finance Position and Alleged Comparators

According to the SAC, the Chief Operating Officer ("COO") is in charge of the Central Office Finance, and titles below the COO in that unit "include comptroller, senior vice president, vice president, assistant vice president and director." See SAC, ¶ 37. Because plaintiff does not list CFO as a title in this unit, see SAC, ¶ 37, it is unclear how plaintiff concludes that Anantharam, whom plaintiff identifies as the CFO, is the head of Finance, see SAC, ¶ 16; see also SAC, ¶ 58 (also identifying Anantharam's predecessor as both CFO and head of Finance). At any rate, according to plaintiff, the highest title in Finance below COO is "comptroller," and there are two titles between AVP and comptroller. See SAC, ¶ 37. Nevertheless, plaintiff claims all AVPs in Finance reported directly to Anantharam, until he changed her reporting structure. SAC, ¶¶ 53-54.

5

Plaintiff also alleges that the Central Office Finance consisted of "various assigned areas of functional responsibilities," including "Budget, Managed Care and Revenue Cycle." SAC, ¶¶ 35-36. Plaintiff identifies the following three persons, all of whom she describes as "Caucasian," as AVPs in Finance: Megan Meagher[2] whose "functional responsibilities involved working on Managed Care matters," and is "less than forty," SAC, ¶¶ 49, 52; Frederick Covino, who "worked on Budget," and "was approximately fifty-two," when plaintiff began in Finance, SAC, ¶¶ 49, 50; and Krista Olson,[3] who also worked on "Budget" and is "less than forty," SAC, ¶¶ 49, 51. Thus, only Meagher is alleged to be in the same unit as plaintiff. Further, plaintiff subsequently clarifies in the SAC that Meagher was a director prior to earning a promotion to AVP in 2017, a change that plaintiff allegedly became aware of after the fact. SAC, ¶¶ 91. 97.

## D.    Alleged Discrimination

### 1.    *Allegations of Discrimination Against African Americans*

Plaintiff contends that "Defendant H+H has a history of denying African-Americans the opportunity to hold high ranking managerial positions above the position of AVP . . . . [and of] denying African-Americans the opportunity for promotions and accompanying salary increases." SAC, ¶¶ 175-77. She further alleges that H+H, and in particular Central Office Finance, "ignores the poor performance of non-African-American employees . . . in these high-ranking positions." SAC, ¶¶ 178-80.

Plaintiff presented these same allegations in the FAC. FAC, ¶¶ 24-25, 28-32. This Court dismissed them as conclusory, and affirmed that in response to plaintiff's request for reconsideration. Beverley I (MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *16-

---

[2] The SAC also spells Meagher's name as Meager. See SAC, ¶¶ 74, 82, 91.
[3] The FAC spells Ms. Olson's first name as Christi. See FAC, ¶ 98.

18 ("conclusory allegations that H+H had a pattern of discrimination against African American employees fail because [plaintiff] does not provide details on these allegations"); Beverley II (Recon. Dec.), 2020 U.S. Dist. LEXIS 176741, *18-19.

### 2. Alleged Discriminatory Remarks

The SAC charges that defendant Anantharam questioned plaintiff about her Caribbean background and commented on his purported "lack of affinity" for the United States' 'African American experience.'" SAC, ¶ 134.  The FAC presented the same allegations.  See Beverley I (MTD Dec.), 2020 U.S. Dist. LEXIS, 55946, *4 (quoting FAC, ¶ 141).  The Court held that plaintiff's "entire discrimination claim is based on a single stray remark, on an unspecified date, where Anantharam referenced her national origin," id., at *14, and that "this comment is insufficient in itself to satisfy a discrimination claim," id., at *10.

The FAC had also charged that unnamed subordinate employees, at an unspecified time, made disparaging remarks about another employee's Caribbean background.  FAC, ¶ 142.  In granting defendants' dismissal, the Court observed that plaintiff "does not identify the employee, the comments that were directed at him, or the date or circumstances of the comments."  Id., at *4 n.4. Nonetheless, the SAC makes the same allegations.  SAC, ¶¶ 135-37.  The SAC attempts to add some details, but, as outlined below, these are scant and do not address all concerns the Court raised.

The SAC's additional allegations are only that the remarks were directed at Julian John, whom the SAC identifies as an "African American" of approximately sixty, and who was the Comptroller in Finance; Mr. John reportedly left Finance the year after defendant Anantharam became the head of that unit, and was replaced by a Caucasian employee.  SAC, ¶¶ 16, 136, 138-39.  The SAC offers no description of the remarks, no

7

names of employees who allegedly made them, no discussion of whether H+H was made aware of the remarks and/or took action in response, and no explanation as to why Mr. John left. See SAC, ¶¶ 135-39.

Further, inconsistent with plaintiff's own allegations of discrimination against African Americans, plaintiff concedes that Mr. John was Comptroller, which she acknowledged was the second ranking position within Finance. SAC, ¶¶ 37, 136. Mr. John and plaintiff are the only two African American employees identified in the SAC, see SAC, passim, and she also described her own position as "high ranking," SAC, ¶ 175.

The SAC contains no other allegations that comments were made on the basis of race or Caribbean descent. See SAC, passim. The SAC contains no allegations that comments were made on the basis of national origin or age. See SAC, passim.

### 3.    *Alleged Discriminatory Treatment*

#### a.    *Alleged Diminution of Authority Already Resolved by the Court*

The SAC contends that, pursuant to an H+H Position Description, all AVPs in Finance are granted wide latitude and discretion to carry out their responsibilities. SAC, ¶ 39. The SAC does not provide a copy of that document. Plaintiff further contends that defendant Anantharam "reduced and eliminated [plaintiff's] authority and responsibilities, including eliminating the latitude and discretion she previously had," but did not do so with respect to the "younger Caucasian" AVPs. SAC, ¶ 45-46.

Plaintiff also alleges that, in August 2017, Anantharam refused to supervise her directly, and required her to report to a Caucasian director, but continued to supervise the Caucasian AVPs.  SAC, ¶¶ 53-55, 103. Plaintiff further contends that Robert Melican was the director to whom she reported, but, somewhat inconsistently, she also contends that Maxine Katz, a Caucasian of approximately 50, supervised plaintiff.  SAC, ¶¶ 48,

8

115. Similarly, in the FAC, plaintiff contended that she had been required to report to these both Melican and Maxine Katz. FAC, ¶¶ 123, 143; see also FAC, ¶ 48 (Melican and Maxine Katz were "appointed to oversee certain projects on which [plaintiff] worked"). She makes a similar allegation in the SAC. See SAC, ¶ 115 (Maxine Katz's approval was required on all of plaintiff's projects). Plaintiff does not provide Maxine Katz's job title in either the FAC or the SAC. See FAC; SAC.

A letter written by plaintiff to Anantharam in December 2017, and referenced in the SAC, see SAC, ¶ 143, however, casts doubt on plaintiff's story about changes in whom plaintiff reported to, because the letter indicates that a reporting change was considered, but had never been implemented. Sullivan Decl., Exh. A, at 1 (plaintiff writes to Anantharam: "After having reported to your predecessor, and initially yourself; you **suggested** that I report to another manager, with a title lower than mine") (emphasis supplied). [4]

This letter also provides Maxine Katz's job title: AVP, same as plaintiff. See Exh. A, at 2. Notably, The SAC does suggest that other AVPs reported to persons holding the AVP title. See SAC, ¶ 56 (declaring that plaintiff "was the only AVP in Finance, whom Defendant Anantharam mandated that she report to a subordinate employee, holding a status and position **below that** of an AVP") (emphasis added).

In any event, the Court's motion to dismiss decision held that such a change in reporting structure (even had it occurred) would not be an adverse employment action. Beverley I (MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *14.

---

[4] Unless otherwise noted, all exhibits referenced are annexed to the Sullivan Decl.

### b.   *Additional Allegations Already Resolved*

The SAC also declares that Anantharam denied plaintiff an assistant, but "provid[ed] the Caucasian AVPs in Finance, such as Covino and Olson[,] with support staff." SAC, ¶¶ 63, 72-73. According to plaintiff, Anantharam also stopped having one-on-one meetings with her in 2017, but continued to hold such meetings with Covino, Olson and Meagher. SAC, ¶¶ 74, 77. Plaintiff further charges that Anantharam rebuffed plaintiff's efforts to send him emails about her work, but, "upon information and belief," Anantharam did not complain about receiving emails from other AVPs. SAC, ¶¶ 78-80. Plaintiff also claims Anantharam was receptive to the comments made at meetings by Olson, Meagher, and Covino, but not to plaintiff's comments. SAC, ¶¶ 81-85.

With the exception of the allegation about email communications, each of these allegations had been put forth in the FAC. See FAC, ¶¶ 133-34 (alleging only plaintiff was denied additional staff); 101-02 (only plaintiff was denied one-on-one meetings); 161 (plaintiff was excluded from meetings); 105-06 (Anantharam was receptive to comments from the others, but not from plaintiff). The Court has already determined that these allegations are inadequate to state a claim. See Beverley I (MTD Dec.), 2020 U.S. Dist. LEXIS 55946, * 13 ("regarding being excluded from meetings and supervised by other employees, courts have ruled that such allegations do not constitute adverse employment actions").

### c. *Alleged Failure to be Promoted and/or to Receive Raise*

In the motion to dismiss decision, the Court observed that plaintiff did "not plead that she ever sought a promotion or raise and was denied." Beverley I (MTD Dec.), 2020 U.S. Dist. LEXIS 55946, * 12. In her request for reconsideration, plaintiff argued that she "did ask for a promotion and raise," but she provided no evidentiary support.

Beverley II (Recon. Dec.), 2020 U.S. Dist. LEXIS 176741, *12.  Moreover, and also in

her request for reconsideration, plaintiff argued that she "could not apply for a promotion,

since Defendants had not put in place a process for announcing and granting

promotions."  Plaintiff's Memorandum of Law in Support of Motion for Reconsideration,

Dkt. No. 41, at 11.  Thus, as the Court noted, plaintiff "confusingly claim[ed] that she

could not apply for a promotion, despite claiming in the same submission that she did

request a promotion."  Beverley II (Recon. Dec.), 2020 U.S. Dist. LEXIS 176741at *13.

Plaintiff now again claims both:  there was no process or procedure by which

employees were made aware of promotional or salary increase opportunities, SAC, ¶ 96,

and, nevertheless, plaintiff did, in January 2017, apply for, and was denied, her requested

"raise in . . . salary and/or a promotion accompanied by a salary increase," SAC, ¶¶ 88-

89.  Significantly, plaintiff does not allege that anyone else at her level successfully

sought a raise and/or promotion in 2017.  See SAC, ¶¶ 88-89.

Plaintiff adds that in 2017 Anantharam promoted Meagher from director to AVP,

and that in 2018 Anantharam promoted both Olson and Covino from AVP to Vice

President.  SAC, ¶¶ 91-93.  These are the only promotions plaintiff mentions in the SAC.

See SAC.  Plaintiff further adds that she became aware of each of these three promotions

"only after they had occurred."  SAC, ¶ 97.  Plaintiff does not allege that she sought any

of these three promotions.  See SAC, ¶ 97.  Of course, Meagher's alleged promotion

merely brought her to plaintiff's title of AVP and thus, would not have been a promotion

for plaintiff.  See SAC, ¶ 91.  Moreover, given plaintiff's termination date of January 5,

2018, it does not appear plausible that she could have sought a promotion that took place

in 2018.  See SAC, ¶ 154 (giving plaintiff's termination date).

11

**E.    Alleged Retaliation**

The SAC claims that upon being informed that she would no longer report to Anantharam, plaintiff "expressed objections," and argued that she was the only AVP in Finance for whom this change was being made.  SAC, ¶ 113.  She claims this change occurred in August 2017, <u>see</u> SAC, ¶ 103, but offers no details regarding her alleged objections, <u>see</u> SAC, ¶ 113.

Plaintiff had made similar allegations about her purported complaints of discriminatory treatment in the FAC, and the Court held that in the FAC plaintiff "does not allege when she made these complaints nor the substance of the conversations." <u>Beverley I (MTD Dec.)</u>, 2020 U.S. Dist. LEXIS 55946, at *14. The Court also held that "[n]o facts support a conclusion that Anantharam assigned other coworkers to supervise Beverley's work, barred her from attending management staff meetings, or terminated her employment because she complained of discrimination." <u>Beverley I (MTD Dec.)</u>, 2020 U.S. Dist. LEXIS 55946, at *14.

In the SAC, plaintiff purports to expand on her allegations.  For one, she provides at least some indication of a date of her complaints:  after the alleged reporting change. That detail, however, contradicts plaintiff's claim in the FAC that the reporting change was retaliatory for her complaints about that alleged change.  <u>See id.</u>

The SAC also claims that Anantharam promised to meet with her and with Robert Melican, the director involved, about this change, but never did so.  SAC, ¶ 114.  Plaintiff further charges that throughout "October 2017," she complained to Anantharam about the change in her authority, and about being blamed for errors made by Melican and Maxine Katz.  SAC, ¶¶ 124-17.  The SAC does not state that plaintiff claimed she was being discriminated against in these alleged complaints.  <u>See</u> SAC, ¶ 125.

On November 1, 2017, Anantharam purportedly told plaintiff she should look for another job, and that he did not know what she did in Finance. SAC, ¶ 128-29. The SAC claims that on or about December 18, 2017, Anantharam told plaintiff that if she did not submit a letter of resignation within two days, he would take her to Human Resources. SAC, ¶ 140-41. Plaintiff alleges that in response she wrote to Anantharam, "repeating her objections to the unfair treatment," and that she provided a copy of this complaint to Brezenoff, but that both men ignored her complaint. SAC, ¶¶ 143-46. The SAC does not provide a copy of this alleged complaint, or provide any further details about its contents. See SAC, ¶ 143-47.

Defendants, however, provide here the written response plaintiff refers to in her SAC. See Exh. A. The letter makes clear that plaintiff did not put forth, or even reference, any allegations of discrimination. See Exh. A. The letter also makes clear that the decision to ask plaintiff to leave had been made in advance of December 18, 2018 (see Exh. A, at 1 "I am requesting a reverse decision regarding my employment").

**F.    Plaintiff's Termination and Alleged Replacement**

Plaintiff, during a January 5, 2018 meeting with the Director of Human Resources, was terminated, effective that day.   SAC, ¶ 154. Plaintiff claims that she complained to defendant Katz in particular, and that she asked to remain on the payroll, while seeking new employment, but that this request was rejected.   SAC, ¶¶ 160-63. The SAC does not offer any details about this alleged complaint.   See SAC, ¶¶ 160.

Plaintiff claims, upon "information and belief," that Covino was terminated in June 2018, but that he was allowed to stay on payroll for two years.   SAC, ¶¶ 164-69. She offers no further details, and, in any event, indicates Covino's termination was six months after her own. See SAC, ¶ 154.

13

Plaintiff contends that Melican was promoted to AVP and replaced her. SAC, ¶ 152. She does not say when this allegedly happened. See SAC, ¶ 152. In the FAC, moreover, plaintiff had claimed that both Melican and new hires performed her duties after she left. FAC, ¶ 171-72.

As she did in the FAC, plaintiff contends in the SAC that defendants "disparaged and blackballed" her for her complaints, precluding her from obtaining comparable employment. FAC, ¶ 175, SAC, ¶ 172. Plaintiff provides no details such as where she allegedly applied, or how and when defendants committed these alleged acts. See FAC, ¶ 175, SAC, ¶ 172. In the SAC, plaintiff claims that she sought other opportunities within H+H, but upon "information and belief" was rejected for these vacancies, even though she believes she was qualified and applied. SAC, ¶ 173. Plaintiff offers no additional details about these purported opportunities, including the position(s), her qualification(s), the successful candidate(s), or even when she purportedly applied. See SAC, ¶ 173.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO STATE A CLAIM OF MONELL LIABILTY

The first count of plaintiff's SAC alleges that H+H, and each of the individual defendants "in their official capacity," engaged in a policy of discriminating against African Americans, in violation of 42 U.S.C. § 1983. SAC, at page 25, "Count I." Accordingly, plaintiff must set forth a claim consistent with municipal liability. See Monell v. Dept. of Social Servs., 436 U.S. 658, 690 n. 55 (1978). As discussed below, this Court has already found plaintiff's Monell claim insufficient, and plaintiff has not provided the Court with any additional supporting allegations. As such, this claim should

14

be dismissed, with prejudice.    Additionally or alternatively, the claim should be dismissed pursuant to the law of the case doctrine.  Finally, even if those hurdles could be overcome, this claim fails to meet the <u>Monell</u> standard for liability.

## A.    This Court Has Already Dismissed This Claim and Plaintiff's SAC Offers No New Supporting Allegations

### 1.    <u>The Prior Dismissal and the Repeated Allegations</u>

Plaintiff pleads municipal liability in Count One solely on the basis of her alleged racial discrimination claims and the claim that H+H has a history of denying African Americans high ranking positions and favoring Caucasian employees. SAC, ¶¶ 175-79. The SAC's recitation is a near-identical repeat of the <u>Monell</u> allegations in plaintiff's FAC.  FAC, ¶¶ 28-31.

In dismissing the FAC, the Court held that plaintiff's "conclusory allegations that H+H had a pattern of discrimination against African American employees fail because she does not provide details on these allegations". <u>Beverley I (MTD Decision)</u>, 2020 U.S. Dist. LEXIS 55946, at *17-18.  Moreover, plaintiff was reminded, in the Reconsideration Decision, of this deficiency.  <u>Beverley II (Recon. Dec.)</u>, at *18 ("The Court . . . found those very allegations to be too conclusory").

Despite the Court's decisions, plaintiff has still not provided any non-conclusory allegations in support of her <u>Monell</u> claims.  To the contrary, she again repeats the same allegations.  <u>See</u> Plaintiff's Memorandum of Law in Support of Motion to for Leave to Amend the First Amended Complaint, Dkt. No. 53 ("Pl. Mem."), at 22.  Plaintiff's refusal to accept the Court's decision should not be rewarded, and her <u>Monell</u> claims of race discrimination should be dismissed.

Defendants also note that plaintiff undercuts her own allegations of discrimination against African-Americans, because the only two African-Americans she identifies in the SAC each held what she described as "high ranking managerial position[s]." SAC, ¶¶ 37, 136, 175. Indeed, plaintiff acknowledges that she was an AVP and Julian John was the Comptroller. SAC, ¶¶ 175, 136.

## 2.    <u>Conclusory Allegations Regarding Alleged Policymakers</u>

To the extent plaintiff makes any effort to have her <u>Monell</u> claim proceed, she relies on her own convenient conjecture that each of the three individual defendants is a policymaker. <u>See</u> SAC, ¶ 204. Nowhere, however, does plaintiff provide support for this contention. SAC, ¶ 204. Moreover, the Court rejected plaintiff's earlier efforts to impose municipal liability on the basis of defendants Katz, Brezenoff, and Anantharam's alleged status as policymakers, because plaintiff had failed to even allege that any of them "instituted policies that give rise to <u>Monell</u> liability." <u>Beverley I (MTD Dec.)</u>, 2020 U.S. Dist. LEXIS 55946, *17.

## B.    The Law of the Case Doctrine

"Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Bermudez v. City of NY</u>, 2015 U.S. Dist. LEXIS 43257, at *23- (S.D.N.Y. Mar. 31, 2015) (quoting <u>DiLaura v. Power Auth. of N.Y.</u>, 982 F.2d 73, 76 (2d Cir. 1992)). The doctrine is discretionary, but the "law of the case generally does control where a party fails to cite to any evidence or absence of evidence justifying the reexamination of a prior ruling on a motion." <u>Id.</u> at 24-25 (rejecting arguments previously advanced in same litigation). As outlined above, plaintiff failed to present any new factual allegations in support of her <u>Monell</u> claim, which should, accordingly, be dismissed with prejudice.

**C.    Independent of the Court's Prior Decision, Plaintiff's <u>Monell</u> Claim Fails**

Plaintiff cites two cases in her instant motion, both of which actually refute her

claim for <u>Monell</u> liability.  <u>See</u> Pl. Mem., at 26-27 (citing <u>Rosenfeld v. Lenich</u>, 370 F.

Supp. 3d 335 (E.D.N.Y. 2019) and <u>Stern v. City of New York</u>, 2015 U.S. Dist. LEXIS

25667 (S.D.N.Y. Mar. 3, 2015)).  In <u>Stern</u>, the Court noted that plaintiff there had made

"specific factual allegations" regarding the allegedly unconstitutional policy. <u>Stern</u>, <u>supra</u>,

at *12.  In contrast, as noted above, this Court observed that the instant plaintiff made no

such allegations.  Further, as the <u>Stern</u> Court noted, and as is absent here, "[a] plaintiff

bringing a <u>Monell</u> claim also must establish a causal connection between the

municipality's official policy and the constitutional violation." <u>Id.</u>, at *9.

Similarly, the <u>Rosenfeld</u> Court held that the "critical inquiry is not whether an

official generally has final policymaking authority, but rather whether the government

official is a final policymaker with respect to the particular conduct challenged in the

lawsuit." <u>Rosenfeld</u>, <u>supra</u>, at 353-54 (citing and <u>quoting</u> <u>Roe v. City of Waterbury</u>, 542

F.3d 31, 37 (2d Cir. 2008)).  As discussed above, plaintiff has failed to offer anything

more than her own conclusory statements regarding both an alleged policy and alleged

policymakers.  Accordingly, plaintiff's reliance on <u>Rosenfeld</u> and <u>Stern</u> is misplaced.

Instead, the caselaw fully supports the conclusion that plaintiff has failed to

properly plead municipal liability on the basis of an alleged policy of racial animus and,

fatal to her <u>Monell</u> claim (and as discussed in Point II and III, <u>infra</u>), plaintiff has not

properly pled any underlying constitutional violations.  <u>See</u>, <u>e.g.</u>, <u>Rivera</u>, 2020 U.S. Dist.

LEXIS 239633, at *19-20 (rejecting <u>Monell</u> claims because complaint pled "only legal

conclusions regarding . . . <u>Monell</u> liability and advance[d] no factual allegations

17

regarding any policy or practice that could have caused [plaintiff's] purported injuries," and rejecting other <u>Monell</u> claims in the absence of allegations of underlying violation).

**D.    Any <u>Monell</u> Claims of National Origin and Age Discrimination, as Well as Retaliation, Had They Been Pled, Would Fail**

Plaintiff has not even pled <u>Monell</u> liability with respect to her claims of national origin or age discrimination, or of retaliation. <u>See</u> SAC <u>generally</u>; <u>see also</u> Pl. Mem., at 22-23 (acknowledging plaintiff's <u>Monell</u> claim is limited to her allegations of discrimination against African Americans). Nevertheless, in Counts Two, Three, and Four of her proposed SAC, plaintiff contends that the individual defendants "in their official capacities," discriminated against her on the basis of her national origin, age, and in retaliation for her alleged complaints of discrimination.[5] <u>See</u> SAC, ¶¶ 208, 219, 233. As noted above, claims brought against City employees "in their official capacities" necessarily require plaintiffs to establish municipal liability. <u>Monell</u>, 436 U.S. at 690 n. 55. The SAC, however, cannot be read to even allege <u>Monell</u> liability on the basis of a policy that implicates national origin, age, or retaliation, given that plaintiff herself does not even allege there is such a policy. <u>See</u> Pl. Mem., at 26-27 (arguing only a policy against African Americans).

Indeed, the allegations plaintiff provides with respect to claims of national origin, age, and retaliatory animus contend only that ***she*** was mistreated. <u>See</u> SAC, ¶¶ 208 (Count II, contending the three individual defendants "in their official capacities," "subjected [plaintiff] to the foregoing mistreatment because of her . . . national origin"); 219 (Count III, same, based on age); 231 (Count IV, alleging liability against all four defendants, including H+H, "in their official capacities," based on alleged retaliation). In

---

[5] Plaintiff also alleges in Count Two that she was discriminated against because of her race. <u>See</u> SAC, ¶ 208. That claim is self-evidently duplicative of Count One.

the absence of allegations that anyone else was discriminated against on the basis of age

or national origin, or was retaliated against, any associated Monell claims, had they been

pled, would be subject to dismissal, because it is settled that, "[a]s a matter of law, one

incident of unconstitutional conduct by a city employee cannot be a basis for finding an

agency-wide custom." Davis v. City of N.Y., 228 F. Supp. 2d 327, 346, n 35 (S.D.N.Y.

2002) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)), aff'd, 75 F. App'x.

827 (2d Cir. 2003).

**E.    Any Monell Claims That Can Be Read into the SAC Fail**

Moreover, even if plaintiff's Monell claims did not fail for any of the reasons

outlined above, these claims should be dismissed as conclusory, see Rivera, 2020 U.S.

Dist. LEXIS 239633, *20, or because plaintiff failed to properly plead an underlying

violation, as discussed in Points II and III, infra.

**POINT II**

**PLAINTIFF   FAILS   TO   STATE   A
CLAIM OF DISCRIMINATION OR OF
HOSTILE WORK ENVIRONMENT**

**A.    Discrimination Claims Should Be Dismissed**

As noted, plaintiff has abandoned her previously-asserted gender discrimination

claims, and she has added a claim of national origin discrimination. Compare Compl.,

Dkt. No. 1, ¶ 1 (alleging bases of age, race, and gender) with SAC, ¶¶ 3, 4 (alleging age,

race, and national origin). As set forth herein, and as illustrated by her shifting theories of

discrimination, plaintiff's discrimination claims are a

> a recitation of a false syllogism: (1) I am
> (insert name of a protected class); (2)
> something bad happened to me at work; (3)
> therefore, it happened because I am (insert
> name of protected class).

19

See Bermudez v. The City of New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011).

Claims of employment discrimination under § 1983 and the CHRL are analyzed under the burden-shifting framework set out in the Supreme Court's decision in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Acosta v. City of N.Y., 2012 U.S. Dist. LEXIS 60460, *13, *16 (S.D.N.Y. Apr. 26, 2012). Accordingly, plaintiff must show (1) membership in a protected class; (2) that she was qualified for the position held or sought; (3) an adverse employment action that (4) took place under circumstances giving rise to an inference of discrimination. Id., at * 13. Although plaintiff has a low burden at the motion to dismiss stage, she still must plausibly allege disparate treatment. Id. See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (well-pled allegations must have "nudged claims across the line from the conceivable to the plausible" to survive a motion to dismiss) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)).

Here, even assuming plaintiff meets the first two elements, she cannot meet the latter two elements because she merely repeats claims that have already been rejected, and/or her claims fail under the Twombly/Iqbal standard.

1.    **Repeated Allegations**

First, plaintiff repeats almost verbatim many of the FAC's allegations: Anantharam allegedly asked plaintiff about her Caribbean background and made a comment about the African American experience in the United States (SAC, ¶ 134; FAC, ¶ 141; Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *4); plaintiff was given less authority and discretion than white alleged comparators and was required to report to a lower level employee (SAC, ¶¶ 39, 45-46, 54-55; FAC, ¶¶ 123, 143; but see Exh. A (plaintiff indicates that this reporting change was only "*suggested*")); plaintiff was denied

20

an assistant, although alleged comparators had support staff; (SAC, ¶¶ 63, 72-73; FAC, ¶¶133-34); Anantharam stopped having one-on-one meetings with plaintiff, but continued such meetings with alleged comparators (SAC, ¶¶ 74, 77; FAC, ¶¶ 101-02); Anantharam was receptive to comments from others, but not to comments from plaintiff (SAC, ¶¶ 81-85; FAC, ¶¶ 105-06).  The Court has already held that none of these rise to the level of an actionable adverse employment action.  Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *13.  Thus, these claims should be dismissed under the Court's prior decision, see id., and/or the law of the case doctrine, see DiLaura, 982 F.2d at 76.

**2.    Modified, But Still Insufficient, Claims**

The Court also held that plaintiff's "entire discrimination claim is based on a single stray remark, on an unspecified date, where Anantharam referenced her national origin," and that such was insufficient to support her claims.  Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *14.  Plaintiff attempted to add supporting allegations to certain claims, but still failed to present plausible claims.

For example, plaintiff claimed that unnamed subordinate employees, at an unspecified time, directed disparaging remarks about his Caribbean background to Comptroller Julian John, who is African American and was later replaced by a Caucasian employee.  SAC, ¶¶16, 135-39.  Plaintiff, however, offers no further details, including: who made the remarks; when the remarks were made; whether defendants were aware of the remarks and if so, what responses they gave; why John left; and who applied to his position after he left.  Given the paucity of information, plaintiff cannot credibly contend that any discrimination claim based on these alleged comments is plausible under Twombly and Iqbal.  Accordingly, the Court should again dismiss claims based on these alleged comments.  See Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55946, * 14.

Similarly, plaintiff purports to add the allegation that Anantharam criticized plaintiff for sending emails, but did not criticize her alleged comparators for that. SAC, ¶¶ 78-80. It has long been settled that being unfairly criticized is not an adverse employment action. Barounis v. N.Y.C. Police Dep't., 2012 U.S. Dist. LEXIS 176477, *21 (S.D.N.Y. Dec. 12, 2012). See also Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *13 (dismissing similar claims).

Plaintiff's three final allegations of discrimination are that she was denied a raise and/or promotion; terminated and replaced by Melican, a white employee; and blackballed when she tried to find a new job. As to the first of these, plaintiff failed to allege an appropriate comparator, and failed to allege she sought the positions in question. Plaintiff's SAC describes only three promotions: in 2017, Meagher was promoted from Director to AVP; and in 2018, Covino and Olson were each promoted from AVP to Vice President. SAC, ¶¶ 91-93. Even assuming each happened on the schedule plaintiff provides, they fail to support her allegations.

Meagher, for example, was at a lower position that plaintiff prior to the 2017 promotion and is thus not a proper comparator. See Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *11-12 (discussing bases for comparators). Plaintiff alleges that she herself was denied a raise and/or promotion in that same year, but she does not allege that anyone at her title of AVP was promoted or received a raise that year. See SAC, ¶ 88-89.

Similarly, plaintiff does not allege that she sought the promotions that Covino and/or Olson purportedly received in 2018; indeed, she says she only became aware of them "after they had occurred." SAC, ¶ 97. Of course, plaintiff also acknowledges that she was terminated the first week of January 2018, SAC, ¶ 154, thus indicating that she

did not (and could not) seek these promotions. Moreover, plaintiff admitted that both Covino and Olson worked in different units than she did within the Finance Department; as plaintiff explained, she herself worked in the Managed Care unit, while both Covino and Olson worked in the Budget unit. SAC, ¶¶ 36, 49-50. As such, it is hardly surprising that plaintiff might be unaware of promotional opportunities in that unit, and plaintiff offers no allegation that she would have even been eligible for – let alone qualified for – the promotions they received. For these reasons, plaintiff's alleged failure to promote claims should be dismissed. See Beverley I (MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *12 (noting, in a similar context, that plaintiff's FAC failed to plead how Covino or Olson could be comparators, in part because Covino worked on "budget matters"); SAC, ¶¶ 49-50 (Covino and Olson were in budget unit).

It need only be added that plaintiff's filings have been wildly inconsistent, given that, in the same document, she claimed that she had applied for a promotion and that she was unable to apply for a promotion. Beverley II (Recon. Dec.), 2020 U.S. Dist. LEXIS 176741, *13. Plaintiff's inconsistency on this point resurfaces in the SAC, where she claims both that she did apply for a promotion *and* there was no process by which she could apply for a promotion. SAC, ¶¶ 88-89, 96. "This Circuit has recognized an exception to the rule that a court must accept all factual assertions as true when attenuated allegations supporting the claim are contradicted by more specific allegations in the Complaint or when a claim is based on wholly conclusory and inconsistent allegations." Grant v. County of Erie, 542 F. App'x. 21, 23 (2d Cir. 2013). Regardless of how plaintiff chooses to describe this claim, however, she has failed to identify an appropriate comparator who allegedly received a promotion she was denied

and, accordingly, her claims should be dismissed. See Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55964, *12.

Plaintiff also claims that after she was terminated, she was replaced by Melican, a "Caucasian." SAC, ¶ 196. First, this allegation is contradicted by the FAC, where plaintiff alleged that her duties were taken over not just by Melican, but by additional, unnamed white employees under sixty. FAC, ¶ 171-72. Next, plaintiff argues in her motion that the mere fact that she was replaced by someone outside her protected class supports an inference of discrimination. Pl. Mem., at 22 (citing Littlejohn v. City of New York, 795 F.2d 297, 312 (2d Cir. 2015) and Zimmerman v. Associates First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)). In making this argument, however, plaintiff ignores settled law holding that "[w]ithout more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive." Marcus v. Leviton Mfg. Co., 661 F. App'x 29, 300 (2d Cir. 2016). Moreover, neither Zimmerman nor Littlejohn require that such an inference be taken.

Indeed, the Second Circuit recently affirmed dismissal, despite an allegation that plaintiff had been replaced by someone outside the protected group. Franchino v Terence Cardinal Cook Health Care Ctr., Inc., 692 F. App'x. 39, 43 (2d Cir 2017). As the Circuit explained, courts "may not consider a particular allegation in isolation; instead, we must consider whether the 'factual content' in a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). That holding is of particular import here, where plaintiff's theories as to who "replaced" her have been divergent; where she has not provide a timeline for any such replacement; and where plaintiff's underlying allegations

24

of discrimination are so conclusory.  See Beverley, 2020 U.S. Dist. LEXIS 55946, *14 (concluding that plaintiff's "entire discrimination claim is based on a single stray remark").  See also Mansaras v. Kraus Sec. Sys., 2021 U.S. Dist. LEXIS 9802, at *11 (S.D.N.Y. Jan. 19, 2021) (granting dismissal where "the pleadings as a whole" undercut any inference that can be drawn by replacement outside the protected group); Elliott v. British Tourist Auth., 172 F. Supp. 2d 395, 400 (S.D.N.Y. 2001) ("It cannot be the case that completely unsupported, self-interested assertions meet the standard for establishing a prima facie case, liberal though that standard may be"), aff'd, 40 F. App'x. 629 (2d Cir. Jul. 16, 2002).

Finally, plaintiff claims that she has been blackballed and prevented from obtaining other employment.  SAC, ¶ 172.  She also made a similar allegation in the FAC.  FAC, ¶ 175.  Plaintiff provides no details such as where she allegedly applied, or how and when defendants committed these alleged acts.  See FAC, ¶ 175, SAC, ¶ 172.  In the SAC, plaintiff adds that she sought opportunities within H+H, but upon "information and belief" was rejected for these vacancies, even though she believes she was qualified and applied.  SAC, ¶ 173.  Plaintiff offers no additional details about these purported opportunities, including the position(s), her qualification(s), the successful candidate(s), or even when she purportedly applied.  See SAC, ¶ 173.  Absent such details, plaintiff's allegations fail to meet the Twombly/Iqbal standard.  See Krug v. Maricopa County Superior Ct., 2014 U.S. Dist. LEXIS 170854, *11-12 (D. Ariz. Dec. 10, 2014) (dismissing similar allegations that were also based on information and belief for failure to meet this standard), aff'd in relevant part, vacated and remanded in part, 674 F. App'x. 652 (9th Cir. 2017).

In sum, "[p]laintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." Little v. New York, 1998 U.S. Dist. LEXIS 21797, at *14-15 (E.D.N.Y. Jun. 8, 1998), aff'd, 1999 U.S. App. LEXIS 7768 (2d Cir. Apr. 14, 1999).

**3.    CHRL Claims of Discrimination Fail**

Defendants acknowledge that CHRL claims must be considered separately from plaintiff's federal claims and construed broadly in her favor. Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS, at *14-15. Still, plaintiff must show that she was treated less well than other employees *because of* her protected characteristics. Id., at *15. Plaintiff cannot meet this standard with respect to *any* of her claims of discrimination, because those claims are based solely on conclusory allegations. See id., at *13-16. As discussed above, even in the few instances where she sought to add to her allegations, the information added was insufficient t support her claims, warranting dismissal. See Acosta, 2012 U.S. Dist. LEXIS 60460, at *17 (CHRL claim "fails under both McDonnell-Douglas and Twombly/Iqbal for the same reason as its federal . . . counterpart[] –i.e., the absence of allegations connecting the purported adverse adverse employment actions to plaintiff's [protected characteristics]").

**B.    Hostile Work Environment Claims Fail**

Plaintiff's alleged hostile work environment claims also fail. As noted, the SAC, like plaintiff's previous filings, is virtually devoid of even arguably discriminatory language. See SAC, passim; Dkt. No. 11, at 2-3 (defendants' pre-motion letter, asserting "plaintiff [did] not cite a single remark by a defendant implicating" the protected categories she was suing under); Beverley I (MTD Dec.), 2020 U.S. Dist. LEXIS 55946, *14 (noting the single stray remark in the FAC). In even harsher alleged circumstances,

hostile environment claims have been dismissed.  See, e.g. Fleming v. MaxMara USA Inc., 371 F. App'x. 115, 119 (2d Cir. 2010) (noting that plaintiff did not "allege any fact to connect this comment to her other allegations of unfair treatment, which are not facially related to her [protected characteristic].  Moreover, her other allegations are generally quite minor – she alleges that defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside her responsibilities, and sent rude emails to her").

## POINT III

### PLAINTIFF'S RETALIATION CLAIMS FAIL

This Court dismissed the retaliation claims in the FAC because plaintiff failed to provide adequate information regarding the timing and substance of her alleged underlying complaints.  Beverley I(MTD Dec.), 2020 U.S. Dist. LEXIS 55964, *14, aff'd on reconsideration, Beverley II(Recon. Dec.), 2020 U.S. Dist. LEXIS 176741, *15-16.  The SAC fares no better, in that plaintiff, once again, fails to provide the Court with adequate information regarding her underlying complaints.

Plaintiff's SAC points to only the following instances where plaintiff purportedly complained of any unfair or improper treatment:  (1) throughout October 2017, she allegedly complained about a perceived lack of authority in running her projects; (2) on undated occasions, she allegedly complained about errors made on projects to which she was assigned and for which she was wrongly blamed; and (3) in her written complaint to Anantharam, which she purportedly provided to Brezenoff, she

> repeat[ed] her objections to the unfair treatment to which she was being subjected, including the requirement that she report to Melican, the errors Melican made on reports

27

> which he falsely attributed to [plaintiff],
> [Anantharam's] demand that she find a job,
> followed by his demand she resign in two
> days, or face the threat of being taken
> Human Resources.

SAC, ¶¶ 125-26, 143-45.  These allegations make no mention of alleged discrimination.

Plaintiff also contends that, on the day she was terminated (although it is unclear whether this happened before or after the termination), she complained to defendant Katz about the "unfair" treatment she had allegedly received.  SAC, ¶ 160.  The SAC makes multiple conclusory allegations that plaintiff complained about "discriminatory treatment," see, e.g., SAC, ¶ 230, but none of her factual allegations offer details about the content of her alleged complaints in a way that clarifies that she was actually complaining about discrimination, as opposed to perceived unfairness or improper treatment.  Further, plaintiff's own letter, submitted in December 2017, also makes no mention of alleged discrimination.  See Exh. A.  This deficiency is fatal to her claim of retaliation, for Courts hold that

> 'mere complaints of unfair treatment by an
> individual are not protected speech' under . .
> .  anti-retaliation provision[s], because
> unfair treatment by an employer does not
> [necessarily] implicate a public interest
> concern' addressed by [anti-discrimination
> laws]. Aspilaire v. Wyeth Pharms., Inc., 612
> F.  Supp.  2d  289,  308  (S.D.N.Y.
> 2009) (citing Ezekwo v. N.Y.C. Health &
> Hosps. Corp., 940 F.2d 775, 781 (2d Cir.
> 1991)). Rather, the burden is on the plaintiff
> to clarify to the employer that [s]he is
> complaining of unfair treatment *due to [her]
> membership in a protected class* and that
> [s]he is not complaining merely of unfair
> treatment generally." *Id.* at 308-09(emphasis
> added).

28

D'Amore v. City of N.Y., 2019 U.S. Dist. LEXIS 104533, at *15-16 (E.D.N.Y. June 21, 2019) (second brackets and italics in original) aff'd, D'Amore v. City of NY, 807 F. App'x. 140 (2d Cir. 2020) (allegation that plaintiff complained of improper assignment insufficient for anti-retaliation purposes). Thus, even if plaintiff's retaliation claims were otherwise viable – a point defendants do not concede – these claims would fail in the absence of allegations that plaintiff complained of actionable discrimination. To the extent plaintiff's SAC can be read to allege otherwise, the SAC is refuted by plaintiff's own letter. See Alexander v. Bd. of Educ., 648 F. App'x. 118, 121 (2d Cir. 2016) (affirming dismissal where documents incorporated by reference in amended complaint contradicted plaintiff's allegations).

Finally, because plaintiff has had multiple opportunities to file a viable complaint, and because, as outlined above, the proposed Second Amended Complaint would be futile, plaintiff's motion should be denied and the case should be dismissed, with prejudice. See Perez-Dickson v. Bridgeport Bd. of Educ., 801 F. App'x. 811 (2d Cir. 2020) (affirming dismissal of proposed amended complaint of employment discrimination and retaliation as futile, where proposed complaint failed to correct deficiencies in prior filing).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in our moving papers, defendants respectfully request that this Court issue an order denying plaintiff's request to file the proposed SAC, and granting such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
           July 2, 2021

GEORGIA M. PESTANA
Acting Corporation Counsel of the City of
New York
Attorney for Defendants
100 Church Street, Room 2-190
New York, New York 10007
(212) 356-2433
dsulliva@law.nyc.gov

By:    /s/ _Donald C. Sullivan_

DONALD C. SULLIVAN
Assistant Corporation Counsel