UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUVAREEN BEVERLEY,

                                        Plaintiff,

        – against –

NEW YORK CITY HEALTH AND
HOSPITALS CORP., MITCHELL KATZ,
*individually and in his official capacity as*
*President and Chief Operating Officer of NYC*
*Health and Hospitals Corp.*, STANLEY
BREZENOFF, *individually and in his official*
*capacity as Interim President and Chief*
*Operating Officer of NYC Health and*
*Hospitals Corp.*, and PLACHIKKAT
ANANTHARAM, *individually and in his*
*official capacity as Chief Financial Officer of*
*NYC Health and Hospitals Corp.*,

                                        Defendants.

**OPINION & ORDER**

18 Civ. 8486 (ER)

RAMOS, D.J.:

        Mauvareen Beverley moves for leave to amend the First Amended Complaint ("FAC"),

bringing discrimination, retaliation, and hostile work environment claims against her former

employer and supervisors.  Beverley is a medical doctor and former Assistant Vice President,

Physician Advisor in Finance/Managed Care for the New York City Health and Hospitals Corp.

("H+H").  The proposed Second Amended Complaint ("SAC") brings claims under federal and

New York City law against H+H as well as three officers of H+H, Mitchell Katz, Stanley

Brezenoff, and Plachikkat Anantharam (collectively, "Defendants").[1]  Beverley alleges that

Defendants discriminated against her because of her race, age, and Caribbean descent, retaliated

against her, and subjected her to a hostile work environment.

---

[1] Unless otherwise noted, citations to "¶ _" refer to Beverley's proposed Second Amended Complaint ("SAC"), Doc.
52-1.

On May 5, 2019, Defendants moved to dismiss the FAC.  Doc. 17.  In her response to Defendants' motion, Beverley did not request leave to amend in the event that the Court dismissed the FAC.  On March 30, 2020, the Court granted Defendants' motion, and directed the Clerk of Court to close the case.  *See* Doc. 33 (the "March 30 Opinion").  On the same day, the Clerk of Court entered judgment, issued a notice of right to appeal, and closed the case.  Doc. 34.

On April 28, Beverley filed a notice of appeal.  Doc. 39.  On May 1, she moved for reconsideration pursuant to Federal Rule of Civil Procedure 59 and Local Rule 6.3 of the Southern District of New York.  Doc. 40.  On September 25, the Court denied her motion for reconsideration, but clarified that she could seek to replead following the resolution of her appeal.  Doc. 47 (the "September 25 Opinion").  On May 10, 2021, the Court received a mandate from the Second Circuit, which vacated and remanded the Court's March 30 Opinion in light of the Court's willingness to permit Beverley to seek to amend her complaint.  Doc. 49.  On the same day, the Court issued an order, permitting her to move for leave to file a second amended complaint, along with a proposed second amended complaint, by June 1, 2021.  Doc. 50.  On June 1, Beverley filed her motion to amend the complaint and the proposed SAC.  Docs. 51, 52-1.

For the reasons set forth below, Beverley's motion for leave to amend is GRANTED in part and DENIED in part.

## I.     FACTUAL BACKGROUND

The facts underlying this case are described in detail in this Court's March 30 and September 25 Opinions, familiarity with which is assumed.  For present purposes, the Court provides an abbreviated summary.

Beverley is an African American woman of Caribbean descent who is over the age of 69. ¶¶ 7–8.  Beginning in 2007, she worked in various positions within H+H until January 5, 2018, when Defendants terminated her employment.  ¶ 9.  From 2015 until her termination, Beverley held the position of Assistant Vice President, Physician Advisor in Finance/Managed Care.  ¶ 48.

At all times relevant herein, and prior to January 2018, Brezenoff was the Interim President and Chief Executive Officer.  ¶ 15.  Beginning in 2016, Anantharam was the Chief Financial Officer and Head of the Central Finance Office.  ¶ 16.  Katz assumed his position as President and Chief Executive Office in January 2018, replacing Brezenoff.  ¶ 14.  All were officers with authority over personnel decisions and policies at H+H.  *See, e.g.*, ¶ 204.

Specifically, Anantharam supervised a management staff that included Beverley, Megan Meagher, Frederick Covino, Krista Olson, Maxine Katz, and Robert Melican, all of whom are white.  ¶¶ 49, 104, 115.  Olson and Meagher are less than 40 years old, Melican is approximately 40 years old, Maxine Katz is approximately 50 years old, and Covino was approximately 52 years old when Beverley began working in Finance.  ¶¶ 48, 50–52, 104, 115.  Meagher, Covino, and Olson held the positions of Assistant Vice President in Finance, and Melican was a director before Anantharam promoted him to Assistant Vice President following Beverley's termination. ¶¶ 49, 104, 152.  Melican has a legal background, while Maxine Katz has a background in education.  ¶ 117.  Lastly, Brenda Schultz is an approximately 40-year-old white Assistant Vice President in H+H's Information Technology Department, and is paid a "high salary" despite her allegedly incompetent performance.  ¶¶ 188–190.

A.    The Alleged Discrimination

As further described in the March 30 and September 25 Opinions, the FAC sets forth the following allegations.  Anantharam questioned Beverley about her Caribbean background and

made comments about his lack of affinity for the "African American experience" in the United States.  ¶ 134.  Another H+H employee of Caribbean descent was subject to disparaging remarks by white employees regarding his background.  ¶¶ 136–37, 139.  Anantharam was dismissive of Beverley's concerns and ideas while being receptive to those of the white Assistant Vice Presidents.  ¶¶ 79–85.  Anantharam did not provide Beverley with resources, such as support staff, that were provided to the white Assistant Vice Presidents and directors.  ¶¶ 63–64, 72–73.  Anantharam discontinued meeting with Beverley while continuing to meet with the white Assistant Vice Presidents and managers.  ¶¶ 76–77, 103.  Anantharam did not give Beverley a salary increase or promotion, while promoting or raising the salaries of the younger white Assistant Vice Presidents and directors.  ¶¶ 88–93.  Anantharam required that Beverley be supervised by and obtain approval from Melican, who was a director and therefore in a lower position than Beverley, and Maxine Katz whose job responsibilities remain unspecified.  ¶¶ 103–10, 115.  H+H has a history of denying African Americans opportunities provided to non-African American employees, including opportunities to hold high-ranking managerial positions and obtain promotions and salary increases, and ignoring the poor performance of non-African Americans.  ¶¶ 175–79.

The SAC expands on these allegations.  First, Beverley explains that the employees in Finance work in three areas of functional responsibilities:  (1) Budget; (2) Managed Care; and (3) Revenue Cycle.  ¶¶ 34–35.  Regardless of an employee's area of functional responsibility, H+H's description for the position of Assistant Vice President in Finance grants the same "wide latitude and discretion to exercise 'independent initiative and unreviewed action.'"  ¶¶ 39–41.  After Anantharam became the head of Finance, he allegedly eliminated such latitude and discretion for Beverley, but did not do so for the younger white Assistant Vice Presidents.  ¶¶ 45–

46; *see also* ¶¶ 107, 112.  Second, after Anantharam stopped meeting with Beverley in 2017, she sent him emails regarding her work.  ¶ 78.  He allegedly complained that he was receiving too many emails from her, while he did not complain about communications received from the other Assistant Vice Presidents.  ¶¶ 78–80.  Third, Beverley asked Anantharam for a raise in salary or a promotion in January 2017, a request which he denied.  ¶¶ 88–90.  In 2017, he promoted Meagher from the position of director to Assistant Vice President, and in 2018, he promoted Olson and Covino from the positions of Assistant Vice President to Vice President.  ¶¶ 91–93. Furthermore, Beverley asserts that there was no system whereby Finance employees were made aware of opportunities for promotions or salary increases, or the criteria or procedure for obtaining such opportunities.  ¶¶ 94–96.  Thus, she became aware of the promotions of Meagher, Olson, and Covino only after they occurred.  ¶ 97.  Fourth, Beverley identifies an H+H employee of Caribbean descent who is only referenced but not named in the FAC as Julian John, a comptroller in Finance, who is approximately 60 years old and African American.  ¶ 136. Following his departure from Finance, John was replaced with Jay Wayman, who is white.  ¶¶ 136–39.

### B.    The Alleged Retaliation

As further described in the March 30 and September 25 Opinions, the FAC asserts that on December 18, 2017, Anantharam told Beverley she had two days to submit a letter of resignation and that in January 2018, Defendants terminated her employment.  ¶¶ 140, 154.  She complained to Katz about the termination and other discriminatory treatment, but he ignored her complaints. ¶ 160.

The SAC details her complaints to her supervisors.  For example, in August 2017, Beverley allegedly objected to being required to report to a subordinate employee and noted that

she was the only Assistant Vice President who was required to do so.  ¶ 113.  Throughout

October 2017, Beverley complained to Anantharam about being prevented from exercising the

same authority over projects as the younger white Assistant Vice Presidents.  ¶ 125.  She further

complained about the errors made on her assignments and for which she was falsely blamed.  ¶

126.  On November 1, 2017, Anantharam told Beverley that she should look for another job and

that he did not know what she did in Finance.  ¶¶ 128–29.  He also began preventing her from

attending managers' meetings or receiving communications sent to the managers in Finance.  ¶¶

130–31.  On December 18, 2017, Anantharam allegedly threatened Beverley to submit a letter of

resignation and stated that if she did not do so, he would take her to human resources.  ¶¶ 141–

42.  On the same day, Beverley wrote to Anantharam regarding the unfair treatment to which she

was being subjected and the fact that his actions were not based on deficiencies in her

performance.  ¶¶ 143–44.  Beverley also provided Brezenoff with a copy of her written

complaint, which he ignored.  ¶ 145.

On January 3, 2018, Anantharam responded to Beverley's complaints of December 18,

pointing to a "reorganization" as the reason for her termination.  ¶ 147.  Beverley asserts that this

"reorganization" was never raised or announced beforehand.  ¶¶ 148–50, 157.  Furthermore,

Defendants did not eliminate Beverley's position and instead promoted Melican to the position

of Assistant Vice President.  ¶¶ 151–52.  On January 5, 2018, Beverley was terminated during a

meeting with the director of human resources who stated that the termination was due to the

alleged organizational changes.  ¶¶ 154–55.  On the same day, Beverley complained to Katz

regarding her termination and the unfair manner in which she was treated.  ¶ 160.  She was

allegedly the only employee in Finance who was terminated as a result of the "reorganization." ¶ 159.[2]

The SAC alleges violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*

## II.   LEGAL STANDARD

### A.   Motion to Amend Pursuant to Federal Rule of Civil Procedure 15(a)

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a party's pleading shall be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Thus, courts generally grant leave to amend "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility[.]"  *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).  The Second Circuit has repeatedly noted that the trial court has broad discretion in ruling on a motion to amend.  *See, e.g.*, *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000); *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998); *Guzman v. Bevona*, 90 F.3d 641, 649 (2d Cir. 1996).

A proposed amendment is futile when it fails to state a claim.  *See Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied.") (citation omitted).  Accordingly, if the amendment would not survive a motion to dismiss, leave to amend should not be granted.  *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 655 F. Supp. 710, 711 (S.D.N.Y. 1987).

---

[2] The SAC also newly alleges that following Beverley's termination on January 5, 2018, she sought to remain on H+H's payroll for approximately three months while seeking new employment.  ¶¶ 161–62.  Defendants allegedly rejected her request while later allowing Covino to stay on the payroll for approximately two years following his termination in June 2018.  ¶¶ 163–69.  As asserted in both the FAC and SAC, Beverley further alleges that Defendants have "disparaged and blackballed" her for her complaints regarding their discriminatory treatment, thereby impairing her ability to find comparable employment.  ¶¶ 172–73.

Therefore, when determining whether leave to amend a complaint should be granted, district courts apply the same legal standard as applied on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *MacEntee v. IBM (Int'l Bus. Machs.*), 783 F. Supp. 2d 434, 446 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 49 (2d Cir. 2012); *Journal Publ'g Co. v. Am. Home Assurance Co.*, 771 F. Supp. 632, 635 (S.D.N.Y. 1991).

### B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy the pleading standard under Federal Rule of Civil Procedure 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

## III.    DISCUSSION

### A.      Section 1983 Discrimination Claims[3]

Counts V and VI against Katz, Brezenoff, and Anantharam in their individual capacities allege that Defendants subjected Beverley to disparate treatment because of her race, national origin, and age in violation of § 1983.

---

[3] Beverley does not expressly bring a claim pursuant to 42 U.S.C. § 1981. *See* ¶¶ 174–268 (Counts I through VIII). However, the SAC includes a singular reference to § 1981. ¶ 2. To the extent Beverley asserts a claim under § 1981, the Court denies her leave to amend this claim for the reasons set forth in its March 30 Opinion. *See* March 30 Opinion at 6.

When alleging employment discrimination under § 1983, a plaintiff must allege the violation of a right secured by the United States laws and Constitution, by persons acting under color of state law. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citing *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). Once a plaintiff has met the "color of law requirement," she must plead facts that enable the court to "'connect the dots' between the adverse employment action and membership in a protected class." *Ahmed v. Gateway Grp. One*, No. 12 Civ. 524 (BMC), 2012 WL 1980386, at *2 (E.D.N.Y. June 1, 2012) (citation omitted).

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Notably, the Second Circuit has held that the "relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

### i.     Anantharam's Alleged Remarks

As the Court held in its March 30 and September 25 Opinions, Anantharam's comment about his lack of affinity for the "African American experience" in the United States, while upsetting and undoubtedly harmful, standing alone, will not support a discrimination claim. *See*

March 30 Opinion at 8 (citing *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)); September 25 Opinion at 9.  Beverley does not specify the timeframe or content of Anantharam's comments, nor does she otherwise connect these comments to any adverse employment actions.[4]

### ii.    Disparate Treatment

Beverley alleges that she was subjected to disparate treatment than the younger, white employees who were not of Caribbean descent.

A plaintiff relying on a disparate treatment claim must show evidence that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.  *Wegmann v. Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016).  Employment characteristics that can support a finding that two employees are similarly situated include education, seniority, performance, and specific work duties.  *Mohan v. City of New York*, No. 17 Civ. 3820 (KPF), 2018 WL 3711821, at *11 (S.D.N.Y. Aug. 3, 2018).  When a plaintiff does not plead facts that would permit a court to infer that she was similarly situated in all material respects to her coworkers, the case must be dismissed.  *Eng v. City of New York*, No. 15 Civ. 1282 (DAB), 2016 WL 750251, at *3 (S.D.N.Y. Feb. 19, 2016).

Similar to the FAC, the SAC references managers who Beverley claims to be comparators, such as Meagher, Covino, Olson, Melican, Maxine Katz, and Schultz.  While Meagher, Covino, and Olson held the positions of Assistant Vice President in Finance, Covino

---

[4] As the Court previously held, Beverley's allegations regarding the disparaging remarks about John's Caribbean background made by unidentified white employees are insufficient to plead a claim under § 1983.  March 30 Opinion at 7.

and Olson worked on budget matters.  ¶¶ 50–51.[5]  Melican was a director with a legal background.  ¶¶ 104, 117.  Maxine Katz had a background in education, but her job responsibilities remain unspecified.  ¶ 117.  Additionally, Melican and Maxine Katz did not have "the technical expertise, such as the expertise of a clinician that Beverley possessed, to work on the medical necessity projects."  ¶ 116.  Finally, while Schultz was an Assistant Vice President, she worked on information technology matters.  ¶ 188.  Therefore, because Covino, Olson, Melican, Maxine Katz, and Schultz had different responsibilities, specializations, and educational backgrounds than Beverley, they were not similarly situated.  *See* March 30 Opinion at 8; September 25 Opinion at 7–8.  Only Meagher, like Beverley, worked on managed care matters. ¶ 52.  Although Beverley fails to detail Meagher's employment characteristics, they shared the same title of Assistant Vice President in Managed Care and reported to Anantharam.  Thus, even though it is a close question, she has adequately alleged that she and Meagher were similarly situated.  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (holding that the employees were similarly situated where they worked in the same group and reported to the same supervisor).  *But see Mohan*, 2018 WL 3711821, at *11 (finding that an individual was not similarly situated where the plaintiff alleged only that they held the same title but did not detail specific work duties, seniority level, or performance).

### iii.     Failure to Promote

Beverley allegedly requested that Anantharam raise her salary or give her a promotion in January 2017.  ¶¶ 88–90.  She asserts that while her request was denied, Covino, Olson, and

---

[5] In the SAC, Beverley newly relies on H+H's description for the position of Assistant Vice President in Finance to assert that she and the other Assistant Vice Presidents were subject to the same workplace standards.  Specifically, she alleges that all Vice Presidents were granted the same "wide latitude and discretion to exercise 'independent initiative and unreviewed action.'" ¶¶ 39–41.  Without more, these allegations fail to support a finding that individuals such as Covino and Olson were similarly situated to Beverley.

Meagher were given promotions or salary increases.  Specifically, Covino and Olson were promoted from the positions of Assistant Vice President to Vice President in 2018.  ¶¶ 91–93.  Meagher was promoted in 2017 from the position of director to Assistant Vice President, which is the position Beverley held.

While the Second Circuit has held that a failure to promote may constitute an adverse employment action, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), a plaintiff must show that she "applied for a position and was rejected."  *Sethi v. Narod*, 12 F. Supp. 3d 505, 525 (E.D.N.Y. 2014) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004)); *see also* March 30 Opinion at 9–10.  As Defendants argue, Beverley does not allege that she applied for any of these three positions.

In fact, Beverley asserts that employees were not made aware of opportunities for promotions and salary increases or the criteria or procedures for obtaining such opportunities.  ¶¶ 94–96.[6]  As explained above, a plaintiff alleging failure to promote ordinarily must show that he or she applied for the specific job at issue.  The Second Circuit has held that this requirement does not apply where "the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them."  *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000).  Nevertheless, Beverley's claims fail for the following reasons.  First, Meagher was promoted to Assistant Vice President, which was Beverley's position and therefore presumably not a position that would have constituted a promotion for her.  Second, assuming *arguendo* that Beverley expressed interest in being promoted to Vice President, Covino and

---

[6] In its September 25 Opinion, the Court noted the conflicting nature of Beverley's arguments that while she asked for a promotion and salary raise, she could not apply for a promotion.  September 25 Opinion at 10.  For the purposes of the instant motion, the Court interprets her allegations to mean that she expressed interest in a salary increase and promotion, and that she was otherwise unaware of any specific available positions.

Olson were promoted in 2018, and Beverley was terminated on January 5, 2018.  Because Beverley does not specifically allege the dates on which Covino and Olson were promoted, it is not clear whether the positions of Vice President were available prior to her termination.  *See id.* (finding that the defendant knew of the plaintiff's interest in being promoted to a specific title but nonetheless failed to make him aware of any promotion opportunities to those positions as they arose).  Thus, Beverley's claims based on a failure to promote fail.

### iv.     Other "Adverse Employment Actions"[7]

As the Court previously held in its March 30 and September 25 Opinions, with respect to Beverley's allegations regarding being excluded from meetings, supervised by other employees, and not being provided with an assistant, courts have ruled that such allegations do not constitute adverse employment actions.  *Williams v. City of New York*, No. 11 Civ. 9679 (CM), 2012 WL 3245448, at *5 (S.D.N.Y. Aug. 8, 2012) (finding that excessive scrutiny, close monitoring, and reprimands do not constitute adverse employment actions); *see also MacAlister v. Millenium Hotels & Resorts*, No. 17 Civ. 6189 (ER), 2018 WL 5886440, at *7 (S.D.N.Y. Nov. 8, 2018) (noting that being wrongly excluded from meetings, being excessively criticized, gossip about the plaintiff, refusing training, reducing job responsibilities, and changes in the office space generally do not constitute adverse employment actions).[8]

---

[7] Because the Court finds that Beverley's allegations do not constitute adverse employment actions, it need not address the parties' dispute as to whether these claims should be dismissed pursuant to the law of the case doctrine.

[8] The cases cited by Beverley, such as, for example, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015), *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007), and *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997), are inapposite, as they involved adverse employment actions which are not alleged here, such as excessive workload and work station and work schedule changes.

v.        **Replacement**

Beverley alleges that following her termination, Defendants promoted Melican, who is an approximately 40-year-old white male, to the position of Assistant Vice President to replace her. ¶¶ 151–52, 191–92.[9]

"[A]n inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312–13. As Beverley argues, "[t]he fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage." *Id.*; *see, e.g.*, *Borzon v. Green*, No. 16 Civ. 7385 (VEC), 2018 WL 3212419, at *9 (S.D.N.Y. June 29, 2018) (finding that plaintiff established a prima facie case of discrimination where he was replaced by an individual outside of his protected class after his termination), *aff'd*, 778 F. App'x 16 (2d Cir. 2019).[10] Thus, although it is a close question, Beverley has pled facts sufficient to support a minimal inference of discrimination. Accordingly, Beverley's motion for leave to amend her

---

[9] Defendants note that the FAC alleges that following Beverley's termination, Melican, in addition to other white employees, performed her duties. FAC ¶¶ 171–72.

[10] Defendants cite cases in which the allegation that the plaintiff was replaced by an individual outside of his or her protected class was not sufficient to make the discrimination claim plausible. The Court agrees with Beverley that these cases are distinguishable. *See Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017) ("Considering the replacement allegation in light of the rest of the complaint, any suggestion of discriminatory motivation is undercut by the allegations that [the plaintiff's coworker] acted out of vindictiveness and self-preservation," not because of the plaintiff's membership in any protected class.); *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32–33 (2d Cir. 2016) (summary order) (noting that "[w]ithout more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive" where the plaintiff "[did] not even provide the age of the new employee" and only alleged "conclusory and speculative facts"); *Mansaray v. Kraus Sec. Sys.*, No. 20 Civ. 1415 (RA), 2021 WL 183275, at *4–5 (S.D.N.Y. Jan. 19, 2021) (finding that "any inference of discrimination to be drawn from the fact that [p]laintiff's replacements were not African is undercut by other allegations," such as the existence of "a long-standing personal relationship" between the plaintiff's supervisor and the replacement and the "same actor inference"). No similar circumstances are presented here.

discrimination claims under § 1983 is granted on the basis of her allegations regarding her replacement by Melican following her termination.[11]

### B.    Section 1983 Retaliation Claims

Count VII against Katz, Brezenoff, and Anantharam in their individual capacities alleges retaliation against Beverley for complaining about the alleged disparate treatment based on her race, national origin, and age.

To survive a motion to dismiss, a plaintiff alleging retaliation must offer allegations that plausibly show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 315–16 (internal quotation marks and citation omitted). "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 5552 (2d Cir. 2010). An informal complaint to a supervisor constitutes protected activity. *Morris v. David Lerner Associates*, 680 F. Supp. 2d 430, 442 (E.D.N.Y. 2010).

The Court previously held that it could not properly evaluate the temporal proximity between Beverley's complaints to Anantharam, Brezenoff, and Katz regarding discriminatory treatment and any alleged retaliation, because she did not allege when she made those complaints or the substance of those conversations. March 30 Opinion at 10–11; September 25 Opinion at

---

[11] Beverley's barebones allegations regarding Defendants' post-termination conduct concerning payroll and "blackballing," without more, are not sufficient to raise an inference of discrimination. The case cited by Beverley is readily distinguishable. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53–55 (2d Cir. 2001) (defendant offered plaintiff severance package involving less money than it offered to plaintiff's colleague who was discharged two days after plaintiff). Here, Beverley alleges that Covino was terminated approximately six months after her termination.

12.  In the SAC, Beverley alleges the specific timeframe and content of her complaints to the individual Defendants.[12]  In summary, she objected to reporting to a subordinate employee, being prevented from exercising authority over her projects, and the errors being made on her assignments by other employees and for which she was falsely blamed.  She also complained that she was treated differently from the other Assistant Vice Presidents and that Anantharam's actions were not based on deficiencies in her performance.

As Defendants argue, based on Beverley's allegations, it is not clear that she complained about being treated differently because of her race, national origin, age, or any other protected status, nor did she link any of the aforementioned grievances to unlawful discrimination.  "The law is clear that [ ] a cursory reference to an unexplained feeling of generic 'discrimination' is, by itself, insufficient to place an employer on notice of a protected complaint."  *Moore v. City of New York*, No. 16 Civ. 7358 (RJS), 2018 WL 1281809, at *5 (S.D.N.Y. Mar. 8, 2018), *aff'd*, 745 F. App'x 407 (2d Cir. 2018); *see also Vega*, 801 F.3d at 91 ("Retaliation occurs when an employer takes action against an employee . . . because he engaged in protected activity— complaining about or otherwise opposing discrimination."); *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice . . . neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-

---

[12] The parties dispute whether the Court should consider Beverley's December 18, 2017 communication to Anantharam, copying Brezenoff, which is attached as an exhibit to Defendants' supporting declaration.  *See* Doc. 58-1.  Defendants argue that because Beverley referenced this document in the SAC, the Court may consider it as being incorporated therein.  Doc. 58 at 3 n.1, 13.  The Court need not resolve this dispute, as the communication at issue would not change its holding as to her retaliation claim.

of activity is, in fact, unlawfully discriminatory.").  Accordingly, Beverley's motion for leave to amend her retaliation claims under § 1983 is denied.[13]

### C.    NYCHRL Claims

Count VIII against all Defendants alleges that they discriminated against Beverley because of her race, age, and national origin, retaliated against her for complaining about their alleged discriminatory conduct, and created a hostile work environment in violation of the NYCHRL.

### i.    Discrimination

It is well-established that the NYCHRL is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011).  Further, the NYCHRL's standards governing discrimination claims "are as or more generous to plaintiffs than those under the analogous federal statutes, such that a claim that satisfies federal law necessarily satisfies the NYCHRL."  *Estevez v. S & P Sales & Trucking LLC*, No. 17 Civ. 1733 (PAE), 2017 WL 5635933, at *3 (S.D.N.Y. Nov. 22, 2017); *see also Gurley v. David H. Berg & Assocs.*, No. 20 Civ. 9998 (ER), 2022 WL 309442, at *5 (S.D.N.Y. Feb. 2, 2022).  Therefore, because Beverley adequately alleges her discrimination claims under § 1983, her discrimination claim under the NYCHRL is also sufficiently pled.

---

[13] The Court finds that the cases cited by Beverley are inapposite.  *See Wanamaker*, 108 F.3d at 465–67 (involving plaintiff who informed defendant's board that he believed his termination decision violated the age discrimination laws and that he would sue for age discrimination); *Denton v. McKee*, 332 F. Supp. 2d 659, 664–65 (S.D.N.Y. 2004) (finding that plaintiffs' speech was constitutionally protected, as required to sustain a First Amendment retaliation claim, where it related to a matter of public concern, specifically how defendants incompetently operated the town's government).

### ii.    Retaliation

To state a claim under the NYCHRL, a plaintiff must plausibly allege that "(1) [the plaintiff] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [the plaintiff]; and (3) a causal connection exists between the protected activity and the adverse action." *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51–52 (N.Y. App. Div. 2012).  "[T]he retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010).  Nevertheless, "[w]hile informal complaints do not need to use the word discrimination to put the employer on notice, they do need to suggest that the complained-of activity is unlawfully discriminatory." *Gurley*, 2022 WL 309442, at *7 (citation omitted) (dismissing retaliation claims under the NYCHRL where it was not clear that the plaintiff complained of unlawful discriminatory treatment as opposed to "run-of-the-mill complaints about certain problems at work").  As set forth above, Beverley has not adequately alleged that she was engaging in protected activity known to Defendants.  Accordingly, Beverley's retaliation claim under the NYCHRL fails.

### iii.    Hostile Work Environment

The standard to prevail on a hostile work environment claim under the NYCHRL is lower than the state and federal counterparts. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).  One must show only "unequal treatment based upon membership in a protected class." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (citation omitted).  In other words, a plaintiff must show that she was "treated 'less well' because of discriminatory intent." *Colon v. Fashion Inst. of Tech. (State Univ. of New York)*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  In evaluating a hostile work environment claim, the

court must look at the "totality of the circumstances." *Mihalik*, 715 F.3d at 111.  However, "petty, slight, or trivial inconveniences are not actionable." *Bermudez*, 783 F. Supp. 2d at 579 (internal quotation marks and citation omitted).

Unlike in the FAC, Beverley alleges that she and Meagher shared the same title of Assistant Vice President in Managed Care specifically.  She further alleges, for example, that she was denied resources and barred from meetings while her younger, white colleagues such as Meagher were not.  Thus, under the NYCHRL's broad pleading standards, Beverley's allegations, all of which suggest that she was treated less well than her younger, white colleagues, are sufficient to state a claim. *See, e.g.*, *Syeed v. Bloomberg L.P.*, No. 20 Civ. 7464 (GHW), 2021 WL 4952486, at *18 (S.D.N.Y. Oct. 25, 2021) (finding that plaintiff plausibly alleged a hostile work environment claim under NYCHRL where she was denied resources that were provided to her male colleagues).  Accordingly, Beverley's hostile work environment claim under the NYCHRL is sufficiently pled.

Thus, Beverley's motion for leave to amend her NYCHRL claims is denied as to her retaliation claim and granted as to her discrimination and hostile work environment claims.

**D.    *Monell* Claims[14]**

Count I against all Defendants alleges racial discrimination, specifically that Defendants maintained a larger custom, policy, or practice of discrimination, in violation of § 1983.  Counts II and III against Katz, Brezenoff, and Anantharam in their official capacities allege that the individual Defendants subjected Beverley to discriminatory treatment because of her race, national origin, and age in violation of § 1983.  Count IV against all Defendants alleges

_____

[14] Because the Court finds that Beverley fails to adequately allege a *Monell* claim, it need not address the parties' dispute as to whether the claim should be dismissed pursuant to the law of the case doctrine.

retaliation against Beverley for complaining about the alleged discriminatory treatment based on her race, national origin, and age in violation of § 1983.

It is well-settled that a plaintiff must show the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). A policy, practice, or custom is an essential element of a *Monell* claim under § 1983. *Monell v. Dep't of Sc. Servs.*, 436 U.S. 658 (1978). "The plaintiff must . . . demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted) (emphasis in original).

As alleged in the FAC, Beverley claims that H+H has a history of denying African Americans high ranking managerial positions and promotions with corresponding salary increases and of ignoring the poor performance of non-African American employees in these positions.[15] As the Court held in its March 30 and September 25 Opinions, Beverley did not support her claims that Katz, Brezenoff, and Anantharam instituted policies that give rise to *Monell* liability or were otherwise municipal policymakers. *Addo v. New York Health & Hosps. Corp.*, No. 15 Civ. 8103 (RA), 2017 WL 4857593, at *10 (S.D.N.Y. Oct. 25, 2017). Nor did she provide any facts demonstrating the existence of a custom or policy or any details concerning her conclusory allegations that H+H had a pattern of discrimination against African American

---

[15] Beverley's conclusory allegations regarding John, disparaging remarks made by unidentified white employees, and his departure from Finance are insufficient to support her *Monell* claims.

employees.  *See* March 30 Opinion at 13; September 25 Opinion at 14.[16]  "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  *Snall v. City of New York*, 242 F.3d 367 (2d Cir. 2000) (citation omitted).[17]

## IV.   CONCLUSION

For the reasons discussed above, Beverley's motion to amend is GRANTED in part and DENIED in part.  Beverley is granted leave to amend her discrimination claims, specifically the allegations regarding her replacement by Melican following her termination, brought pursuant to 42 U.S.C. § 1983 and NYCHRL and her hostile work environment claim brought pursuant to NYCHRL.  Beverley is denied leave to amend her retaliation claims brought pursuant to 42 U.S.C. § 1983 and NYCHRL and her *Monell* claims brought pursuant to 42 U.S.C. § 1983. Beverley is directed to file her Second Amended Complaint as allowed by this opinion, by April 13, 2022.  Defendants are directed to answer by May 4, 2022.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 51.

It is SO ORDERED.

Dated:   March 23, 2022
         New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.

---

[16] To the extent that Beverley alleges *Monell* claims based on national origin discrimination, age discrimination, or retaliation in Counts II through IV, such claims are insufficiently pled for the reasons set forth with respect to Count I.

[17] The Court agrees with Defendants that the cases cited by Beverley are inapposite.  *See Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 353–55 (E.D.N.Y. 2019) (denying motion to dismiss *Monell* claim where plaintiff established as a matter of law that defendant was a final policymaker with detailed allegations regarding defendant's authority); *Stern v. City of New York*, No. 12 Civ. 5210 (NGG) (RER), 2015 WL 918754, at *4–5 (E.D.N.Y. Mar. 3, 2015) (denying motion to dismiss *Monell* claim where plaintiff made specific factual allegations that are related to the alleged constitutional violations).  In contrast to the allegations pled in these cases, Beverley's conclusory and generalized allegations fall short.