UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUVAREEN BEVERLEY,

                              Plaintiff,

– *against* –

NEW YORK CITY HEALTH AND HOSPITALS
CORP., MITCHELL KATZ, *individually and in his
official capacity as President and Chief Operating
Officer of NYC Health and Hospitals Corp.*,
STANLEY BREZENOFF, *individually and in his
official capacity as Interim President and Chief
Operating Officer of NYC Health and Hospitals
Corp.*, *and* PLACHIKKAT ANANTHARAM,
*individually and in his official capacity as Chief
Financial Officer of NYC Health and Hospitals
Corp.*,

                              Defendants.

**ORDER**

18-cv-08486 (ER)

RAMOS, D.J.:

        Mauvareen Beverley, a medical doctor and former Assistant Vice President,

Physician Advisor in Finance/Managed Care for the New York City Health and Hospitals

Corp. ("H+H"), brings this action against H+H and three of its officers, Mitchell Katz,

Stanley Brezenoff, and Plachikkat Anantharam (collectively, "Defendants").  Beverley

alleges that Defendants discriminated against her because of her race, age, and Caribbean

descent, in violation of federal and New York City law.  After filing a Second Amended

Complaint ("SAC") on April 13, 2022, she commenced discovery and made numerous

document requests.  Before the Court is Beverley's motion to compel Defendants to

produce the requested documents, alleging they failed to respond adequately.  Doc. 90.

Defendants argue that they responded to all requests and produced documents in all cases

except where those requests were duplicative, not relevant, or not proportional.  For the

following reasons, Beverley's motion is DENIED.

I.     **BACKGROUND**[1]

A. **Factual Background**

The Court assumes familiarity with the background of this case, which is described in detail in the Court's prior opinions. *See* Doc. 33 (March 30, 2020 Opinion), Doc. 47 (September 25, 2020 Opinion), Doc. 63 (March 23, 2022 Opinion). An abbreviated summary of relevant facts is included below.

Beverley is an African American woman of Caribbean descent over the age of 69. ¶¶ 7–8. Beginning in 2007, she worked in various positions within H+H. ¶ 9. Beginning in 2015, Beverley held the position of Assistant Vice President, Physician Advisor in Finance/Managed Care. ¶ 51. At all times relevant herein, Brezenoff was the Interim President and Chief Executive Officer. ¶ 15. Beginning in 2016, Anantharam was the Chief Financial Officer and Head of the Central Finance Office. ¶ 16.

Specifically, Anantharam supervised a management staff that included Beverley, Megan Meagher, Maxine Katz, and Robert Melican, all of whom, with the exception of Beverley, are white. ¶¶ 54, 71, 103. Meager, Katz, and Melican are all also younger than Beverley. ¶¶ 52, 53, 96, 107. Meagher held the position of Assistant Vice President in Finance, and Melican was a director, a position lower than Assistant Vice President. ¶¶ 52, 96.

In the SAC, Beverley explains that the employees in Finance work in three areas of functional responsibilities: (1) Budget; (2) Managed Care; and (3) Revenue Cycle. ¶¶ 37–38. Regardless of an employee's area of functional responsibility, H+H's description for the position of Assistant Vice President in Finance grants the same "wide latitude and discretion to exercise 'independent initiative and unreviewed action.'" ¶¶ 42–43. After Anantharam became the head of Finance in 2016, he allegedly eliminated latitude and discretion for Beverley, but did not do so for the younger white Assistant Vice Presidents including Meagher. ¶¶ 46–49; *see also* ¶¶ 99, 101, 104.

---

[1] Unless otherwise noted, citations to "¶_" refer to Beverley's SAC, Doc. 64.

Beverley alleges the following treatment and conduct as an employee of H+H.  In 2016, Beverley asked Anantharam for a staff to support her in performing her duties.  ¶ 73.  Anantharam denied Beverley's request, while providing support staff to Meagher.  ¶ 74.  Additionally, during his tenure as head of Finance, Anantharam held one on one meetings with the management staff.  However, in 2017, Anantharam stopped holding one on one meetings with Beverley.  ¶¶ 75–78.  As an alternative, Beverley began to send him emails regarding her work.  ¶ 79.  Anantharam complained that he was receiving too many emails from her and dismissed her comments, suggestions, and input, but he did not complain about communications received from the other Assistant Vice Presidents.  ¶¶ 80–86.

In August 2017, Anantharam told Beverley that he would no longer supervise her, but he continued to supervise the other Assistant Vice Presidents.  ¶¶ 55, 97.  Instead, Anantharam required Beverley, but not Meagher or any other Assistant Vice President, to report to an employee in a subordinate position to Assistant Vice President—Melican, a white employee who held the position of director.  ¶¶ 56, 95–98, 100–03.  Anantharam then required Beverley to obtain Katz's approval for all of her projects, despite the fact that Katz lacked the technical expertise to work on her projects.  ¶¶ 107–08.  Beverley also alleges Melican and Katz barred her from meetings about her projects, and that she was falsely blamed for errors.  ¶¶ 114–18, 158.

In October 2017, Beverley complained to Anantharam about her working conditions, but her complaints were ignored.  ¶¶ 117–19.  On November 1, 2017, Anantharam told Beverley she should look for another job, ¶ 120, and on December 18, 2017, he told Beverley to submit her letter of resignation, ¶ 127.  Beverley was eventually terminated on January 5, 2018, due to alleged organizational changes and restructuring.  ¶¶ 142–44.

Following Beverley's termination, Defendants replaced her with Melican, who was also was promoted from director to Assistant Vice President.  ¶¶ 140–41, 153.

Beverley alleges that Melican lacks the skills and expertise for this role.  ¶ 154.  In January 2018, Katz replaced Brezenoff and assumed the position of President and Chief Executive Officer.  ¶ 14.

Beverley also alleges that during her entire tenure in Finance, from 2015 to 2018, Defendants failed to establish a system for performance evaluations of managers as required by H+H's Equal Employment Opportunity ("EEO") Plan.  ¶¶ 90–92.

### B.  Procedural History

Beverley commenced this action on September 18, 2018.  Doc. 1.  She filed the First Amended Complaint (FAC) on April 5, 2019.  Doc. 16.  The FAC asserted discrimination and retaliation claims on the basis of her race or national origin under 42 U.S.C. § 1981 and 1983.  *Id.*  It also asserted a hostile work environment claim in violation § 1983, as well as a discrimination claim on the basis of her race, national origin, gender and age under the New York City Human Rights Law ("NYCHRL").  *Id.*

On May 5, 2019, Defendants moved to dismiss the FAC.  Doc. 17.  In her response to Defendants' motion, Beverley did not request leave to amend in the event that the Court dismissed the FAC.  Doc. 22.  On March 30, 2020, the Court granted Defendants' motion, and directed the Clerk of Court to close the case.  Doc. 33.  Beverley filed her notice of appeal with the Second Circuit on April 28, 2020, Doc. 39, and also moved for reconsideration on May 1, 2020, Doc. 40.  On September 25, 2020, the Court denied Beverley's motion for reconsideration, but clarified that she could seek to replead her claims following the resolution of her appeal.  Doc. 47.  On May 10, 2021, the Second Circuit issued a mandate, which vacated and remanded the Court's March 30, 2020 Opinion in light of the Court's willingness to permit Beverley to seek to amend her complaint.  Doc. 49.

On June 1, 2021, Beverley filed her motion to amend the complaint and the proposed SAC.  Docs. 51, 52-1.  In its March 23, 2022 Opinion granting leave to amend, the Court limited the scope of the claims Beverley was allowed to replead in her SAC.

Doc. 63 at 21.  Specifically, Beverley was granted leave to replead her § 1983 and
NYCHRL discrimination claims regarding race, age, and national origin.  *Id.*  The Court
found Meagher to be the only similarly situated comparator for any disparate treatment
claim.  *Id.* at 11.  The Court found that the basis for these claims was limited to
Beverley's replacement by Melican, and any other bases for these claims, including
failure to promote or other adverse employment actions such as exclusion from meetings,
failed.  *Id.* at 13–15.  Beverley was also granted leave to amend her hostile work
environment claim brought pursuant to NYCHRL.  *Id.* at 21.  She was denied leave to
amend all other claims.  *Id.*

On April 13, 2022, Beverley filed the SAC, which asserts four counts.  Count one
alleges race and national origin discrimination claims pursuant to § 1983 against Katz,
Brezenoff and Anantharam.  ¶¶ 163–71.  Count two alleges age discrimination claims
pursuant to §1983 against Katz, Brezenoff and Anantharam. ¶¶ 172–80.  Count three
alleges race, age, and national origin discrimination pursuant to the NYCHRL against
Katz, Brezenoff, Anantharam, and H+H.  ¶¶ 181–89.  Finally, count four alleges hostile
work environment claims against Katz, Brezenoff, Anantharam and H+H.  ¶¶ 190–95.

**C.  Discovery Dispute**

The instant motion concerns a discovery dispute between the parties.  Beverley
submitted 22 interrogatories and 67 requests for documents on September 2, 2022.  Doc.
91-2.  The document requests are summarized below:

- Document Request 1:  All documents identified in response to the
  interrogatories.  Doc. 91-3 at 2.

- Document Request 2:  Organizational chart for Finance during January 1,
  2015 through December 31, 2017 with titles, names, and description of
  hierarchy relationships all for directors, assistant vice presidents, and vice
  presidents.  *Id.* at 2.

- Document Request 3:  Personnel files, including those describing "education
  and work experience, positions . . . performance reviews, promotions they
  received and salary" for Robert Melican and Megan Meagher.  *Id.* at 3.

- Document Request 4:  Documents describing the "meetings scheduled and the meetings held in Finance." *Id.* at 3.

- Document Request 5:  Calendars of any meetings Anantharam held with Beverley and any "employees holding the titles of Director, Assistant Vice President and titles above Assistant Vice President in Finance." *Id.* at 4.

- Document Request 6:  Documents which describe the duties and responsibilities of Beverley, Melican, and Meager.  *Id.*

- Document Request 7:  Documents that identify "fringe benefits to which [Beverley] was entitled while employed in Finance." *Id.* at 5.

- Document Request 8:  Books, pamphlets or other documents that Defendants "disseminated or distributed" to Beverley.  *Id.*

- Document Request 9:  Files "relating to [Beverley]'s employment in Finance and the claims she raises in this Action" including Beverley's personnel file and any departmental or other related files.  *Id.* at 6.

- Document Request 10:  Any report, statement, writing, or document that reflects statements or communication by Beverley regarding these claims. *Id.* at 7.

- Document Request 11:  All documents related to the Beverley's termination, including records of all persons involved and reasons for termination.  *Id.*

- Document Request 12:  Documents which "discuss or describe in any way the reason or reasons for [Beverley]'s termination." *Id.* at 8.

- Document Request 13:  Documents with Beverley's job description.  *Id.*

- Document Request 14:  Documents of any "evaluation, assessment or description of [Beverley]'s performance while working in Finance." *Id.* at 9.

- Document Request 15:  Documents—including notes and memoranda—that describe or discuss reasons for Beverley's termination.  *Id.*

- Document Request 16:  Employee handbooks and statements and documents of personnel policies and practices "in effect during [Beverley]'s employment in Finance." *Id.*

- Document Request 17:  Documents supporting Defendants' defenses that (a) actions were taken in good faith for legitimate business reasons, (b) damages Beverley sustained were caused by her own negligent conduct, (c) Beverley failed to mitigate her damages, (d) Beverley's claims are barred by the statute of limitations, (e) Beverley's claims are barred by failure to perform conditions precedent or exhaust all administrative remedies, and (f) Beverley failed to take advantage of preventative or corrective opportunities provided by Defendants. *Id.* at 10.

- Document Request 18:  H+H Operating Procedure "Managerial Decisions Affecting Group 11 Employees' Employment Status or Salary" from April 29, 2005. *Id.* at 11.

- Document Request 19:  Documents related to the "structure and organization of the Revenue Cycle Unit in Finance and all other units in Finance."  *Id*.

- Document Request 20:  Documents related to the "structure and organization of the revenue cycle function in Finance."  *Id*.

- Document Request 21:  Documents on which Defendants relied to terminate Beverley.  *Id*. at 12.

- Document Request 22:  Documents used to promote Melican to Assistant Vice President or other position.  *Id*.

- Document Request 23:  All documents related to Finance employees' performance evaluations.  *Id*.

- Document Request 24:  All documents related to references Defendants submitted on behalf of Beverley for other employment after her termination.  *Id*. at 13.

- Document Request 25:  All documents listing all benefit entitlements for Beverley during her employment in Finance.  *Id*.

- Document Request 26:  H+H employee anti-discrimination policy.  *Id*. at 14.

- Document Request 27:  All minutes, notes, and diary entries of meetings Defendants held with Beverley related to her performance, duties, and termination.  *Id*.

- Document Request 28:  Job descriptions for every position held by Beverley, Melican, and Meagher.  *Id*. at 15.

- Document Request 29:  All documents "relating to any evaluation, assessment or description of Beverley's performance while employed in Finance."  *Id*.

- Document Request 30:  All documents "relating to any evaluation, assessment or description of Robert Melican's performance while employed in Finance."  *Id*.

- Document Request 31:  Documents which show "age, national origin and race or present or former" Finance Assistant Vice Presidents.  *Id*. at 16.

- Document Request 32:  Documents of any "lawsuits, charges or complaints" of discrimination and hostile work environment made by Finance's employees.  *Id*.

- Document Request 33:  "Any and all personnel manuals Defendants distributed to their employees."  *Id*. at 17.

- Document Request 34:  Training documents provided to Defendants for the EEO plan and H+H anti-discrimination policies.  *Id*.

- Document Request 35:  Any documents which "revise, supplement, amend or replace the EEO Plan."  *Id*. at 18.

- Document Request 36:  Organizational chart for Finance from January 1, 2018 to present with titles, names, descriptions for all directors and Assistant Vice Presidents.  *Id.*

- Document Request 37:  Documents related to "requests for, responses to requests for, discussions, meetings or communications" regarding Beverley's support staff.  *Id.* at 19.

- Document Request 38:  Documents related to communications with the Program Management Office about Beverley and her performance.  *Id.*

- Document Request 39:  All communications Angeles Pai, Anantharam's Chief of Staff, had about Beverley's meeting attendance and Anantharam's meetings with Beverley and other Assistant Vice Presidents.  *Id.*; ¶ 123.

- Document Request 40:  All documents of Defendants' communications with Physician Advisors Richard Fogler, Brenda Merritt, Sharla Bryan, Caryn Colobo, Joseph Rabinovich, and Janet Carr (who were employed by H+H) regarding termination of Beverley's employment.  *Id.* at 20.

- Document Request 41:  All documents "related to meetings, discussions and communications of members of H+H's Board of Directors."  *Id.*

- Document Request 42:  All communications with Joseph Alexander[2] about Beverley's employment and termination.  Doc. 91-1 at 21.

- Document Request 43:  All documents of communications with Joseph Alexander about the elimination of Beverley's role due to organizational changes or restructuring of management positions.  *Id.*

- Document Request 44:  All documents showing the restructured managerial positions in Finance.  *Id.*

- Document Request 45:  All documents showing all restructured managerial positions.  *Id.*

- Document Request 46:  All documents describing Beverley's role in Finance at time of termination.  *Id.*

- Document Request 47:  All documents "related to the alleged elimination of Beverley's role in Finance."  *Id.*

- Document Request 48:  H+H Operating Procedure 20-26.  *Id.*

- Document Request 49:  H+H Operating Procedures related to retention and termination of Assistant Vice President employees.  *Id.* at 21–22.

- Document Request 50:  All documents describing how projects are identified and assigned to employees.  Doc. 91-3 at 21.

- Document Request 51:  All documents "describing the duties and responsibilities of [Katz, Brezenoff, and Anantharam]."  *Id.*

---

[2] The parties do not provide additional details about Joseph Alexander's identity or relevance to this action.

- Document Request 52:  All documents describing why Brezenoff and Anantharam no longer work in Finance, the date they stopped, and their present employment.  *Id.* at 21–22.

- Document Request 53:  All complaints made by Finance employees about lack of support staff, exclusion from meetings with Anantharam, exclusion from or not getting notice of Department meetings, and exclusion from communications distributed to Assistant Vice Presidents or higher.  *Id.* at 22

- Document Request 54:  All documents describing projects and assignments of Beverley and Robert Melican.  *Id.* at 23.

- Document Request 55:  All documents which identify meetings held about projects assigned to Beverley and Robert Melican, and those meeting attendees.  *Id.* at 23.

- Document Request 56:  All documents related to project evaluation of Beverley and Robert Melican.  *Id.* at 24.

- Document Request 57:  All documents of meetings between Anantharam and Robert Melican regarding Melican's projects and assignments.  *Id.*

- Document Request 58:  All documents related to discussions or communications Ananatharm had with Robert Melican regarding Beverley's performance.  *Id.* at 25.

- Document Request 59:  All documents showing the "effect, result and impact of any restructuring, reorganization or change on the department, unit or section of Finance where [Beverley] worked during her tenure in Finance." *Id.*

- Document Request 60:  All documents related to the operation and work done by Finance employees for the external appeal process.  *Id.* at 26.

- Document Request 61:  All documents related to the operation and work done by Finance employees for H+H medical necessity denials.  *Id.*

- Document Request 62:  All documents that identify employees who worked on the H+H external appeal process.  *Id.*

- Document Request 63:  All documents that identify employees who worked on H+H medical necessity denials.  *Id.*

- Document Request 64:  Documents between January 1, 2017 and December 31, 2017 which identify and describe positions in Finance that were eliminated.  *Id.* at 27.

- Document Request 65:  Documents between January 1, 2018 and document request date which identify and describe positions in Finance that were eliminated.  *Id.*

- Document Request 66:  Documents between January 1, 2017 and document request date with identify and describe positions in Finance that were eliminated and replaced.  *Id.* at 28.

■ Document Request 67:  All documents related to complaints of age, race, national origin, or gender discrimination, formal or informal, internal or external, made against the Defendants.  *Id*.

On January 31, 2023, Defendants provided responses to each document request in turn, detailing any objections and indicating the intent to produce responsive documents. Doc. 91-3.  Beverley claims that Defendants only produced responsive documents to some of the document requests:  specifically, document requests 7, 16, 23, 25, 26.  Doc. 92 at 10.  On May 16, 2023, Beverley moved to compel the production of the documents responsive to the other requests.  Doc. 90.

## II.   LEGAL STANDARD

Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*   "Rule 26 limits discovery where requests are unreasonably cumulative or duplicative [or]. . . . the discovery can be obtained from a more convenient, less burdensome, or less expensive source."  *Shiber v. Centerview Partners LLC*, No. 21 Civ. 3649 (ER), 2023 WL 3071554, at *2 (S.D.N.Y. Apr. 25, 2023) (citing Fed. R. Civ. P. 26(b)(2)(C)).  The scope of relevance under Rule 26 is broader than under the Federal Rules of Evidence.  "Relevance is. . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 293 (LTS) (JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Sec. & Exch. Comm'n v. Rayat*, No. 21 Civ. 4777 (LJL), 2022 WL 1423300, at *2 (S.D.N.Y. May 5, 2022).

Federal district courts have broad discretion in deciding motions to compel. *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). The burden of demonstrating relevance is on the party seeking discovery. *Go New York Tours, Inc. v. Aurora Tourism Services, LLC,* No. 22 Civ. 10633 (DEH) (JW), 2023 WL 9111158, at *1 (S.D.N.Y. Dec. 20, 2023) (citing *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (citing *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (confirming that the burden of demonstrating relevance remains on the party seeking discovery even after 2015 amendments to Rule 26). If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). "'General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.'" *Go New York Tours, Inc,* 2023 WL 9111158 at *1 (S.D.N.Y. Dec. 20, 2023) (quoting *Melendez v. Greiner*, No. 1 Civ. 7888 (SAS) (DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). Rather, the resisting party has the burden of showing "how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. at 88. (quoting *Sokol v. Wyeth, Inc.,* No. 7 Civ. 8442 (SHS) (KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008).

## III.   DISCUSSION

Of the initial 67 document requests, five of the requests, 7, 16, 23, 25, and 26, are not at issue, as Beverley concedes Defendants produced sufficient responses to those requests. Doc. 92 at 8. Of the 61[3] outstanding requests, Defendants argue first that

---

[3] Neither party refers to document request 67 in their papers. *See* Docs. 92, 93, and 96. Accordingly, the Court assumes that this document request is not presently at issue.

requests 11–13, 15, 20–21, 27–30, 33, 35–36, 38–40, 53–57, and 66 are duplicative. Doc. 91-3.  Second, they claim that Defendants provided documents—or noted there were no responsive documents—for requests 1, 3, 6, 9–10, 14, 18–19, 22, 31–32, 34, and 64.  Doc. 93 at 2–3.  Third, they argue that for the remaining document requests, Defendants declined to provide documents on the basis of several objections:  relevance and proportionality to the claims allowed by the Court, lack of reasonable limitation in time and scope, assuming facts not established in the record, and requesting attorney work product.  Doc. 91-3.  Finally, Defendants claim they never received document requests 42–49 in the initial request and are currently working to provide responses, and claim they are still searching for documents related to request 2.  Doc. 93-1 at 12.

### A.  Defendants Properly Identified Requests 11–13, 15, 20–21, 27–30, 33, 35–36, 38–40, 55–57, and 66 As Duplicative.

In their response, Defendants point out 22 instances of duplication.  Doc. 93 at 6.  Beverley argues in her reply to Defendants' letter motion that document requests cannot be held duplicative without a full response to the original request.  Doc. 96 at 6.  Defendants note that for most of the requests that they identified as duplicative, they produced documents for the earlier request, and simply referred Beverley to that initial production in their response.  Doc. 93 at 7.

The Court is required to limit discovery if it is unreasonably cumulative or duplicative.  "Under Rule 26(b)(2), the court 'must limit the frequency or extent of discovery' if it determines that 'the discovery sought is unreasonably cumulative or duplicative.'"  *In re Commodity Exch., Inc., Gold Futures and Options Trading Litig.*, No. 14 Misc. 2548 (VEC), 2019 WL 13046984, at *4 (S.D.N.Y. Feb. 25, 2019) (citing Federal Rule of Civil Procedure 26(b)(2)).  Here, several of the document requests are verbatim duplicate requests, and others ask for substantially the same documents.  Doc.

91-2.[4]  For those documents that are clearly duplicative, Defendants need not produce the same documents again.  *Structured Asset Sales, LLC v. Sheeran*, 433 F. Supp. 3d 608, 612 (S.D.N.Y. 2020) ("To the extent that defendants have already produced some requested documents, they need not duplicate those efforts.").

Beverley argues that document requests cannot be duplicative unless a full response was provided to the original request, Doc. 96 at 6.  But, Defendants do provide responses to the original request, and Beverley does not specifically reference which responses are incomplete.[5]  Accordingly, her argument is unavailing.

Finally, Defendants claim 53, 54 and 66 are duplicative of requests 14, 50, and interrogatory 22, respectively.  Doc. 91-3 at 22–23, 28.  Upon review, the Court finds that the requests are not duplicative.  However, Defendants object to requests 53 and 54 on other grounds as irrelevant to the claims and vague in time and scope, *id,* which are discussed below.  And the Court finds request 66 duplicative of requests 19 and 44 instead.  *Id.* at 17, 21, 24.

Accordingly, as requests 11–13, 15, 20–21, 26–30, 33, 35–36, 38–40, 55–57, and 66 are duplicative of other requests, the motion to compel production as to those documents is denied.

### B.  Defendants Fully Responded To Requests 1, 3, 6, 9–10, 14, 18–19, 22, 31–32, 34, 37, 58, 64

Defendants claim to have produced documents for requests 1,3, 6, 9–10, 14, 18–19, 22, 31, 34, and 64, Doc. 93-1 at 2–11, 17, and have found no responsive documents

---

[4] Specifically, the following requests are duplicative:  requests 11 and 12 of one another and of interrogatories 3, 5, 7; request 13 of 6; request 15 of 12; request 20 of 19; request 21 of 5, 11, 12, and 15; request 25 of 7; request 27 of 9, 10, and 14; request 28 of 6 and 13; request 29 of 14; request 30 of 3 and 6; requests 33 and 35 of 16; request 36 of 19; request 38 of 14, 27, and 29; request 39 of 4 and 5; request 40 of interrogatory 20; request 55 of 4,5 and 27; request 56 of 14 and 23; and request 57 of 55.  *See* Doc. 91-3; Doc. 93 at 6.

[5] Indeed, Beverley's acceptance of duplication as a sufficient response in some instances undercuts her objections on the grounds of duplication on the other occasions.  *See, e.g.*, Doc. 91, Doc. 91-3 at 14 (Beverley accepting response that request 25 is duplicative); Doc. 93 at 3; Doc. 91-3 at 14 (Beverley conceding that Defendants' response was sufficient even though the response was that it was duplicative of request 16).

that exist for request 32, *id.* at 10.  Further, Defendants object to requests 37 and 58 as assuming facts not in evidence, Doc. 91-3 at 19, 25, explaining that Plaintiff has already been told in depositions that the requested documents do not exist, Doc. 93 at 8–9. Beverley objects on the basis that Defendants' responses or documents are not responsive or incomplete.  Doc. 92 at 13.

Generally, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'"  *Menard v. Chrysler Grp. LLC*, No. 14 Civ. 6325 (VB), 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015) (quoting *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)). Further, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Services, Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (internal citations and quotations omitted).  In other words, plaintiffs must cite to specific evidence to challenge Defendants' assertions that no additional responsive documents exist.  *Id.*; *see e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, No. 4 Civ. 1514 (PAC), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (noting that moving party did "not cite any specific evidence impugning [the non-movant's] assertions that their production [was] complete" and thus court could not find basis for misconduct).

Here, Beverley has not identified specific evidence to call into question Defendants' contention that no further responsive documents exist as to requests 1,3, 6, 9–10, 14, 18–19, 22, 31, 34, and 64.  Specifically, in her initial motion, Beverley notes that "Defendants made a partial and deficient production of a total of 373 pages of documents in response to Beverley's document requests."  Doc. 92 at 13.  She then lists some of the documents that Defendants provided including Beverley's personnel file, employment forms and documents, documents related to Melican and Meagher, and

Defendants' leave policy.  Doc. 92 at 13.  But, all of these documents are included in Beverley's discovery requests, Doc. 91-3, so it is not clear why their production does not satisfy her requests.  She also concedes that Defendants provided the Bates Stamp numbers of the documents they produced for each response.  Doc. 96 at 5. Accordingly, because Beverley has not met her burden of challenging Defendants' assertions that their production is complete, her motion to compel production to these requests is denied.

Likewise, as to request 32, for which Defendants claim no responsive documents exist, Beverley does not cite to specific evidence to challenge that assertion.  Doc. 92. *See Jackson v. Edwards*, No. 99 Civ. 982 (JSR), 2000 WL 782947, at *3–4 (S.D.N.Y. June 16, 2000) ("Since plaintiff has offered nothing to show that [defendant's claims that he has no responsive documents] are untrue, [plaintiff's] motion to compel a further response to these requests is denied."); *cf. Ramgoolie v. Ramgoolie*, No. 16 Civ. 3345 (VEC), 2019 WL 5722082, at *1–2 (S.D.N.Y. Jan. 29, 2019) (compelling further production because the plaintiff was able to show specific evidence of bank transactions occurring in the timeframe where the defendant claimed there were no transaction documents to produce).  Accordingly, Beverley's motion to compel a response to these requests is denied.[6]

As to requests 37 and 58, Defendants claim that Plaintiff has requested documents that prior information shows do not exist.  Doc. 93 at 8.  Document request 58, for example, requested documents related to communications between Anantharam and Melican regarding Beverley and her performance.  Doc. 91-1 at 23.  But, at the depositions of both Anantharam and Melican, they claim "they never engaged in such discussions."  Doc. 93 at 8–9.  Plaintiff does not provide specific evidence to counter this assertion, beyond conclusory statements claiming no such denial occurred in the

---

[6] To the extent Beverley argues that Defendants' objections are boilerplate, Doc. 92 at 8, she does not produce examples of how Defendants' responses objecting to production were deficient.

depositions.  Doc. 96 at 10–11.[7]  Accordingly, Defendants have made a good faith

averment that the items Beverley seeks do not exist, *Menard*, 2015 WL 5472724 at *1,

and Beverley has not made an adequate showing, in the face of Defendants' denial, that

these documents otherwise are in Defendant's possession, custody, or control, *Mason*

*Tenders*, 318 F.R.D. at 42.

Accordingly, the Court finds the document production sufficient and accepts

Defendants' representations where no other responsive documents exist for requests 1, 3,

6, 9–10, 14, 18–19, 22, 31, 32, 34, 37, 58, and 64.  *See Menard*, 2015 WL 5472724 at *1.

### C. Defendants' Objections to the Remaining Document Requests

Defendants object to the remaining document requests—4, 5, 8, 24, 41, 50–54,

59–63, and 65—as irrelevant and not proportional to the case.  Doc. 93 at 8–11; Doc. 93-

1 at 3–17.  They additionally object to request 17 on the grounds that it constitutes

attorney work product, as described in more detail below.  Doc. 93-1 at 7.

#### 1. *Claims 4, 5, 8, 24, 41, 50–54, 59–63, and 65 Are Irrelevant or Are Not Proportionate.*

For requests 4, 5, 8, 24, 41, 50–54, 59–63, and 65, Defendants argue that Beverley

has not demonstrated the relevance of any of the items she seeks to compel, Doc. 93 at

10, or are otherwise not proportional to the needs of the case, *id*. at 9, 10.  Beverley

claims, on the other hand, that the requests meet the legal test for relevancy.  Doc. 92 at

9–10.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P.

26(b)(1).  However, "[t]he burden of demonstrating relevance is on the party seeking

discovery."  *Perkins v. Chelsea Piers Mgmt.*, No. 11 Civ. 8998 (ALC), 2012 WL

4832814, at *1 (S.D.N.Y. Oct. 10, 2012).  A plaintiff's conclusory statements that his or

---

[7] Beverley notes in her reply that "[c]ontrary to Defendants' assertion neither Anantharam nor Melican denied in their depositions having meetings or discussions regarding Plaintiff or her performance," but provides no evidence, such as deposition excerpts, in support of this claim.  Doc. 96 at 11–12.

her requests are relevant is not enough.  *See Bailey v. New York Law School,* No. 16 Civ.

4283 (ER), 2018 WL 11476375, at *1 (S.D.N.Y. Apr. 30, 2018).  Moreover, the moving

party must "provide the necessary linkage between the discovery sought and the claims

brought and/or defenses asserted in the case."  *Palm Bay Int'l, Inc. v. Marchesi Di Barolo*

*S.p.A.*, No. 9 Civ. 601 (ADS), 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009).  In

regards to proportionality, this inquiry focuses on the marginal utility of the discovery

sought.  *Zubulake v. UBS Warburg, LLC,* 217 F.R.D. 309, 322–23 (S.D.N.Y. 2003).

Proportionality and relevance are "'conjoined' concepts; the greater the relevance of the

information in issue, the less likely its discovery will be found to be disproportionate."

*Vaigasi v. Solow Mgmt. Corp*., No. 11 Civ. 5088 (RMB), 2016 WL 616386, at *14

(S.D.N.Y. Feb. 16, 2016).

　　　Here, Beverley has not made the requisite showing of relevance or

proportionality.  As the Court held in its March 23, 2022 Opinion, Meagher is the only

appropriate comparator for any disparate treatment claim, Doc. 63 at 11, and the basis for

Beverley's § 1983 and NYCHRL claims had to be predicated on her replacement by

Melican, *id*. at 13.  Beverley requests 15 categories of documents but has not specifically

explained their relevance in this action.  Her motion to compel, for example, merely

groups the requests into different categories.  Doc. 92 at 10–13.[8]  Indeed, many of the

document requests extended far beyond that scope of the case.  For example, document

request 32 asks for documents concerning any "lawsuits, charges or complaints" of

discrimination and hostile work environment made by the employees of the Finance

---

[8] In her reply brief, Beverley raises new arguments as to the relevance of each of the categories of
document requests she has identified.  Doc. 96 at 6–17.  "'Arguments may not be made for the first time in
a reply brief.'"  *Simpson v. City of New York*, 793 F.3d 259, 264 (2d Cir. 2015) (quoting *Knipe v. Skinner*,
999 F.2d 708, 711 (2d Cir.1993).  Courts are not required to consider newly raised arguments as it denies
the opposing party the opportunity to respond.  *Marcoux v. Farm Serv. and Supplies, Inc.,* 290 F. Supp. 2d
457, 484 n.28 (S.D.N.Y. 2003) (citing *United States v. Yousef*, 327 F.3d 56, 115, 171 (2d Cir.2003), cert.
denied, 540 U.S. 933, 124 S.Ct. 353, 157 L.Ed.2d 241, 2003 WL 22005941 (Oct. 6, 2003).  The Court thus
limits its consideration to Beverley's principal brief, which fails to advance any argument as to the
relevance of her requests.  *See Simpson,* 793 F. 3d at 264.

division.  Doc. 91-3 at 16.  Many of the document requests specified no time period or referenced all managers in Finance.  *See, e.g.*, Doc. 91-1 at 22.  Therefore, Beverley does not sufficiently carry her burden of showing relevance beyond mere conclusory statements.  *See Perkins* 2012 WL 4832814 at *1*; *Bailey*, 2018 WL 11476375 at *1*. Given the wide scope of documents sought, the Court also finds that the document requests are not proportional.  *Zubulake*, 217 F.R.D at 322–23.  While Beverley argues that the requests are all restricted to the period between January 2012 to present, Doc. 96 at 5, this does not change the result.  Beverley's proposed timeframe is over a decade long, and stretches beyond the period during which the alleged discrimination occurred— and is therefore not relevant to Beverley's claims.  Therefore, the Court denies the motion to compel as to document requests 4, 5, 8, 24, 41, 50–54, 59–63, and 65.

2.  *Defendant Properly Objected to Request 17 Seeking Discovery of Attorney Thoughts and Theories.*

Defendant objects to providing documents in response to document request 17, as it asks for the thoughts and theories of Defendants' attorney.  Doc. 91-3 at 7.  Discovery rules, while generally broad, "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).  *See also In re In-Store Advert. Securities Litig.*, 163 F.R.D. 452, 457 (S.D.N.Y. 1995) (holding that documents which would reveal mental processes of attorneys in conducting litigation were protected work product).

Beverley argues that in order for Defendants to object on such grounds, they must provide details about the withheld documents.  Doc. 96 at 13.  But, Rule 26 specifies that in the case of materials prepared by counsel in anticipation of litigation, the *requesting* party must show "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  Beverley has not made, nor even attempted to make, this showing

here.  As the documents requested are those that support Defendant's defenses, the Court

denies the motion to compel on this ground.  *See In re In-Store Advert. Securities Litig.*,

163 F.R.D. at 457.  However, the parties are directed to exchange privilege logs listing

any documents that are being withheld on this basis.

### D.  Defendants Are Directed To Respond To Document Requests 2, 42–49.

Defendants allege that they never received the page of the discovery request

asking for documents 42–49 and thus did not provide responses.  Doc. 91-3 at 12; Doc.

93 at 2.  Beverley claims that she provided them with a duplicate request, including that

page, but she has not received a response to these requests.  Doc. 96 at 13.  Defendants

also note they are searching for documents with regard to document request 2.  Doc. 93-1

at 2.

Since Defendants are still searching for documents responsive to document

request 2 and have not yet responded to requests 42–49; a motion to compel document

production is not yet ripe.  *See Menard*, 2015 WL 5472724 at *1.  Because the

Defendants do not raise any objections to producing these documents, and note that they

are currently searching for potentially responsive documents, Doc. 93-1 at 2, 12, the

Court directs them respond to the requests by April 12, 2024.  *See U.S. for Use and

Benefit of M. Frank Higgins & Co., Inc. v. Dobco Inc.,* No. 22 Civ. 9599 (CS) (VR), 2023

WL 5302371, at *4 (S.D.N.Y. Aug. 17, 2023) (noting that Rules 26 and 34 "obligate a

party to produce information that is relevant and responsive.").

### E.  Redactions Should Be Identified On A Privilege Log

Finally, Beverley notes that some documents are redacted.  Doc. 92 at 8.  While

neither party specifies which documents, in particular, are redacted, the information

redacted should be identified on a privilege log.  "[R]edactions of portions of a document

are normally impermissible unless the redactions are based on a legal privilege."  *John

Wiley & Sons. Inc. v. Book Dog Books, LLC,* 298 F.R.D. 184, 186 (S.D.N.Y. 2014); *see

also In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig*., No. 8 Civ. 333 (RJH),

2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context"). Where the information redacted or withheld is protected by privilege, such information should be identified on a privilege log so as not to leave redactions to Defendants' "unfettered discretion." *See In re Bystolic Antitrust Litig.*, No. 20 Civ. 5735 (LJL), 2021 WL 878568, at *1–2 (S.D.N.Y. Mar. 9, 2021*)* ("[A]ny redaction of non-responsive and Highly Confidential information must be accompanied by a statement by the producing party of the general nature of the redacted information and the reason for which it is deemed non-responsive and Highly Confidential sufficient for the receiving party to make an objection to the redaction.").

Accordingly, any Defendants are directed to provide a privilege log which will include reasons why documents were redacted.

## IV.    CONCLUSION

For the reasons stated the motion to compel is DENIED.  Defendants are directed to respond to those requests not yet responded to:  2 and 42–49.  The parties are further directed to exchange privilege logs for any documents withheld on the basis of privilege and of any redacted documents by April 12, 2024. The Clerk of Court is respectfully directed to terminate the motion, Doc. 90.

It is SO ORDERED.

Dated:    March 29, 2024
          New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.