UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUVAREEN BEVERLEY,

                    Plaintiff,

– *against* –

NEW YORK CITY HEALTH AND HOSPITALS
CORP., MITCHELL KATZ, *individually and in his*
*official capacity as President and Chief Operating*
*Officer of NYC Health and Hospitals Corp.*,
STANLEY BREZENOFF, *individually and in his*
*official capacity as Interim President and Chief*
*Operating Officer of NYC Health and Hospitals*
*Corp.*, *and* PLACHIKKAT ANANTHARAM,
*individually and in his official capacity as Chief*
*Financial Officer of NYC Health and Hospitals*
*Corp.*,

                    Defendants.

**ORDER**

18-cv-08486 (ER)

RAMOS, D.J.:

      Mauvareen Beverley, a medical doctor and former Assistant Vice President for the

New York City Health and Hospitals Corporation ("H+H"), brings this action against

H+H and three of its officers, Mitchell Katz, Stanley Brezenoff, and Plachikkat

Anantharam (collectively, "Defendants"). Beverley alleges that Defendants

discriminated against her because of her race, age, and Caribbean descent, in violation of

federal and New York City law. After filing a Second Amended Complaint ("SAC") on

April 13, 2022, she commenced discovery. Before the Court is Beverley's motion to

compel Defendants to produce certain witnesses pursuant to Federal Rule of Civil

Procedure 30(b)(6) and documents identified during the depositions of witnesses who

appeared on the behalf of the Defendants. Doc. 111. For the reasons set forth below,

Beverley's motion is GRANTED in part and DENIED in part.

I.      **BACKGROUND**[1]

A.  **Factual Background**

The Court assumes familiarity with the background of this case, which is described in detail in the Court's four prior opinions. *See* Doc. 33 (March 30, 2020 Opinion), Doc. 47 (September 25, 2020 Opinion), Doc. 63 (March 23, 2022 Opinion), Doc. 127 (March 29, 2024 Opinion).  An abbreviated summary of relevant facts is included below.

Beverley is an African American woman of Caribbean descent over the age of 69. ¶¶ 7–8.  Beginning in 2007, she worked in various positions within H+H.  ¶ 9.  Beginning in 2015, Beverley held the position of Assistant Vice President, Physician Advisor in Finance/Managed Care.  ¶ 51.  At all times relevant herein, Brezenoff was the Interim President and Chief Executive Officer.  ¶ 15.  In January 2018, Katz replaced Brezenoff and assumed the position of President and Chief Executive Officer.  ¶ 14.  Beginning in 2016, Anantharam was the Chief Financial Officer and Head of the Central Finance Office.  ¶ 16.

Specifically, Anantharam supervised a management staff that included Beverley, Megan Meagher, Maxine Katz, and Robert Melican, all of whom, with the exception of Beverley, are white.  ¶¶ 52, 54, 71, 103.  Meagher, Katz, and Melican are all also younger than Beverley.  ¶¶ 52, 53, 96, 107.  Melican was a director, a position lower than the one Beverley held as Assistant Vice President.  ¶ 96.

In the SAC, Beverley explains that the employees in Finance work in three areas of functional responsibilities:  (1) Budget; (2) Managed Care; and (3) Revenue Cycle.  ¶¶ 37–38.  Regardless of an employee's area of functional responsibility, H+H's description for the position of Assistant Vice President in Finance grants the same "wide latitude and discretion to exercise 'independent initiative and unreviewed action.'"  ¶¶ 42–43.  After Anantharam became the head of Finance in 2016, he allegedly eliminated that latitude

---

[1] Unless otherwise noted, citations to "¶ _" refer to Beverley's SAC, Doc. 64.

and discretion for Beverley, but did not do so for the younger white Assistant Vice Presidents.  ¶¶ 46–49; *see also* ¶¶ 99, 101, 104.  Beverley also alleges that Anantharam denied her support staff while providing such staff to other employees, such as Meagher and Melican,  ¶¶ 73–74; declined having one-on one meetings with Beverley but continued having meetings with the other Assistant Vice Presidents, ¶¶ 75–78; and refused to supervise her while agreeing to supervise other Assistant Vice Presidents, ¶¶ 55, 97.  Anantharam required Beverley, but not any other Assistant Vice President, to report to Melican, who was employed in a position subordinate to her.  ¶¶ 56, 95–98, 100–03.

On July 27, 2017, the board of H+H agreed to execute an agreement with Huron, a consulting group that works with healthcare organizations.  Specifically, Huron was hired to improve revenue generation at H+H through providing "training, process re-design, implementation, and establish[ing] governance and quality control."  Doc. 120-14 at 32.

In October 2017, Beverley complained to Anantharam about being prevented from exercising the same authority over projects as the younger and white Assistant Vice Presidents, but her complaints were ignored.  ¶¶ 117–19.  Beverley was eventually terminated on January 5, 2018, due to alleged organizational changes and restructuring implemented in connection with Huron's recommendations.  ¶¶ 142–44; Doc. 113 at 16.

**B.  Procedural History**

Beverley commenced this action on September 18, 2018.  Doc. 1.  She filed the First Amended Complaint (FAC) on April 5, 2019.  Doc. 16.  The FAC asserted discrimination and retaliation claims on the basis of her race or national origin under 42 U.S.C. § 1981 and 1983.  *Id*.  It also asserted a hostile work environment claim in violation § 1983, as well as a discrimination claim on the basis of her race, national origin, gender and age under the New York City Human Rights Law ("NYCHRL").  *Id*.

On May 5, 2019, Defendants moved to dismiss the FAC.  Doc. 17.  In her response to Defendants' motion, Beverley did not request leave to amend in the event that the Court dismissed the FAC.  Doc. 22.  On March 30, 2020, the Court granted Defendants' motion, and directed the Clerk of Court to close the case.  Doc. 33.  Beverley filed her notice of appeal with the Second Circuit on April 28, 2020, Doc. 39, and also moved for reconsideration on May 1, 2020, Doc. 40.  On September 25, 2020, the Court denied Beverley's motion for reconsideration, but clarified that she could seek to replead her claims following the resolution of her appeal.  Doc. 47.  On May 10, 2021, the Second Circuit issued a mandate, which vacated and remanded the Court's March 30, 2020 Opinion in light of the Court's willingness to permit Beverley to seek to amend her complaint.  Doc. 49.

On June 1, 2021, Beverley filed her motion to amend the complaint and the proposed SAC.  Docs. 51, 52-1.  In its March 23, 2022 Opinion granting leave to amend, the Court limited the scope of the claims Beverley was allowed to replead.  Doc. 63 at 21.  Specifically, Beverley was "granted leave to amend her discrimination claims, specifically the allegations regarding her replacement by [Robert] Melican following her termination, brought pursuant to 42 U.S.C. § 1983 and NYCHRL."  *Id.*  The Court also held that Beverley could allege hostile work environment claims, but only under the NYCHRL.  *Id.*

On April 13, 2022, Beverley filed the SAC, which asserts race and national origin discrimination claims pursuant to § 1983, race, age, and national origin discrimination pursuant to the NYCHRL, and hostile work environment claims pursuant to the NYCHRL.  Doc. 64.

### C.  Discovery Dispute

#### 1.  Rule 30(b)(6) Notice Dispute

The instant motion concerns discovery disputes between the parties.  On May 18, 2023, Beverley's counsel served a Federal Rule of Civil Procedure 30(b)(6)[2] notice seeking to depose a witness on behalf of Defendant H+H with "knowledge or information regarding thirteen categories of information, eleven of which are disputed.  Doc. 112-1. These disputed categories are:

> A.  "Finance Budget for Fiscal Years 2017 to the present, including any lines that were added or deleted to the Finance budget during that period."
>
> B.  "The Huron contract, including the revenue cycle management services performed pursuant to said contract and the reason the contract was not renewed."
>
> C.  "The medical necessity function performed in Finance, including the identity of the persons who perform that function from January 1, 2014 to the present."
>
> D.  "The medical necessity denials and appeals functions performed in Finance, including the identity of the persons who perform those functions from January 1, 2014 to the present."
>
> F.  "Persons hired to work in Finance during the period December 1, 2017 to the present, including their duties and responsibilities."
>
> G.  "The organizational changes and restructuring of management positions in Finance during the period January 1, 2017 to the present, including the management positions which were the subject of the organizational changes and restructuring."
>
> H.  "Plaintiff's role in Finance during her tenure in Finance."

---

[2]  Pursuant to Rule 30(b)(6):

> In its notice or subpoena, a party may name as the deponent a public or private corporation . . .  and must describe with reasonable particularity the matters for examination.  The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.  Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination.  A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify.  The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

I.  "The Clinical Documentation Integrity Unit of Finance, including the identity of employees who work in that Unit during the period January 1, 2014 to the present."

J.  "The Revenue Cycle Unit of Finance, including the Revenue Cycle Functional Organization Chart which Defendants produced, and the identity of employees who work in that Unit during the period January 1, 2014 to the present."

K.  "The revenue cycle initiatives undertaken during the period January 1, 2014 to the present and the identity of the employees who worked on said initiatives."

L.  "The Revenue Integrity Unit of Finance, including the Revenue Integrity Table of Organization Chart, Defendants produced and the identity of employees who work in that Unit during the period January 1, 2014 to the present."

*Id.*

On July 24, 2023, Beverley's counsel emailed Defendants' prior counsel alleging deficiencies in Defendants' responses to the 30(b)(6) notice and requesting to meet and confer. Doc. 121 at 7–8. Defendants' then-counsel explained that she was "still trying to get an answer on the 30(b)(6)" but that the case would soon be transferred to another attorney as she would soon be out on medical leave. *Id.* On July 28, 2023, Defendants' prior counsel informed Beverley's counsel that they were attempting in good faith to produce witnesses who could testify to the requested topics, but that "many of your requests are overbroad" and that counsel for Beverley had "already deposed a former [Chief Financial Officer] who would've had answers to most of [the] requests." Doc. 112-3 at 3. The email also states that "nevertheless, [H+H] is trying to find employees who may be able to answer your requests." *Id.*

Shortly after this email exchange, Defendants' prior counsel was replaced by the current counsel.[3] Counsel discussed the Rule 30(b)(6) notice on August 9, 2023 and again on August 25, 2023. Doc. 121 at 8. During these conversations, counsel for Defendants alleges that he "attempted to communicate Defendants' objections" on the

---

[3] Both prior counsel and present counsel are part of the New York City Law Department.

basis of overbreadth, relevance, and burden, but that counsel for Beverley refused to discuss these objections or narrow the proposed topics. *Id*. Defendants then produced a Rule 30(b)(6) witness, Dr. David Silvestri, who was deposed on September 6, 2023 regarding the medical necessity function and medical necessity denials and appeals (categories C and D). *Id*. As relevant to this motion, Dr. Silvestri's testimony was limited to the period beginning in June 2018, and he did not have personal knowledge regarding the entire period described in the notice (January 1, 2014 to the present). *See* Doc. 112-1; Doc. 112-6 at 65:12-25, 66:1-5; 73:6-17. During the Silvestri testimony, counsel for Defendants represented they would "try" to produce a witness to testify regarding the period prior to June 2018. Doc. 112-6 at 61:18-24.

On October 13, 2023, five months after the Rule 30(b)(6) deposition notice was served, Defendants served their formal written objections. Doc. 120-3. On October 30, 2023 Defendants produced a second 30(b)(6) witness, Dr. Yvette Villanueva regarding topics that are not at issue in this motion. Doc. 121 at 8–9. Defendants have not produced any other Rule 30(b)(6) witnesses. The parties conferred on November 17, 2023 and December 5, 2023 and exchanged communications to try resolving this matter, without success. Doc. 113 at 12.

   *2. Document Requests From Depositions*

In the meantime, on April 5, 2023, defendant Anantharam was deposed by Beverley's counsel. Doc. 124-8. During the deposition, Anantharam testified that, to the best of his knowledge, Beverley was the only employee in Finance who was terminated as a result of H+H's contract with Huron. *Id.* at 195:20–25. Anantharam also identified several documents which counsel for Beverley requested be turned over. Doc. 113 at 12. Specifically, there are three document requests from the Anantharam deposition which are disputed:[4]

---

[4] Beverley made a total of nine document requests in response to Anantharam deposition. Doc. 112-9.

- ▪ Document Request 3: "The Finance budget for fiscal years 2017, 2018, and 2019, including documents related to the iterative process about which [Defendant Anantharam] testified."

- ▪ Document Request 5: "Documents showing any budget lines that were added to or deleted from the Finance budget for fiscal years 2017 and 2018, including any documents generated or created regarding all new employees hired during those fiscal years to work in Finance, such as but not limited to those reflected on Personnel Action forms."

- ▪ Document Request 7: "Documents related to communications and meetings between Brezenoff and Anantharam regarding (a) the contract with Huron and (b) the retention of, hiring of, or contracting with Huron to perform revenue administration and/or revenue cycle management."

*See* Doc. 112-9 at 6–9. Sometime thereafter, Defendants objected to producing the aforementioned documents. *See* Doc. 120-2.

Non-party Robert Melican was deposed on May 16, 2023, and identified six individuals who were members of his staff: Alison Smith, Andrea Hewitt, Uma Eummaun, Matilida Tili, Jason Dryden, and Jeannie Ryan. Doc. 126-9 at 99:11–16. Counsel for Beverley requested documents concerning the job descriptions for these six individuals. *See* Doc. 112-10 at 6. Beverley was deposed on June 1, 2023. Doc. 120-12. On September 14, 2023, the Defendants objected to producing documents in response to request from the Melican deposition. *See* Doc. 120-1.

On January 16, 2024, Beverley moved to compel Defendants to produce witnesses in response to the topics listed in her May 18, 2023 Rule 30(b)(6) notice, as well as the production of the aforementioned document requests. Doc. 111. Defendants argue they should not be compelled to produce witnesses in response to the Rule 30(b)(6) notice because the topics seek irrelevant information, are not described with reasonable particularity, and are unreasonably cumulative. Doc. 121 at 12–23. They also argue that the document requests from the depositions are disproportionate to the needs of the case or have otherwise been sufficiently responded to. *Id.* at 24–29.

## II.   LEGAL STANDARDS

### A.  Rule 26(b)(1)

Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  "Rule 26 limits discovery where requests are unreasonably cumulative or duplicative [or]. . . . the discovery can be obtained from a more convenient, less burdensome, or less expensive source."  *Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2023 WL 3071554, at *2 (S.D.N.Y. Apr. 25, 2023) (citing Fed. R. Civ. P. 26(b)(2)(C)).  The scope of relevance under Rule 26 is broader than under the Federal Rules of Evidence.  "Relevance is. . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-293 (LTS) (JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Sec. & Exch. Comm'n v. Rayat*, No. 21-cv-4777 (LJL), 2022 WL 1423300, at *2 (S.D.N.Y. May 5, 2022).

Federal district courts have broad discretion in deciding motions to compel.  *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999).  The burden of demonstrating relevance is on the party seeking discovery.  *Go New York Tours, Inc. v. Aurora Tourism Services, LLC,* No. 22-cv-10633 (DEH) (JW), 2023 WL 9111158, at *1 (S.D.N.Y. Dec. 20, 2023) (citing *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (citing *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-cv-9792 (WHP)

(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (confirming that the burden of demonstrating relevance remains on the party seeking discovery even after 2015 amendments to Rule 26).  If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied.  *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016).  "'General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.'"  *Go New York Tours, Inc,* 2023 WL 9111158 at *1 (S.D.N.Y. Dec. 20, 2023) (quoting *Melendez v. Greiner*, No. 1-cv-7888 (SAS) (DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).  Rather, the resisting party has the burden of showing "how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive."  *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. at 88. (quoting *Sokol v. Wyeth, Inc.,* No. 7-cv-8442 (SHS) (KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008).

## B. Rule 30(b)(6)

Pursuant to Rule 30(b)(6), "when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject."  *Reilly v. Natwest Markets Group, Inc*., 181 F.3d 253, 268 (2d Cir. 1999).  This representative must "testify about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  If the corporate representative lacks personal knowledge concerning the matters in the deposition notice, then "the corporation is obligated to prepare them so that they may give knowledgeable answers."  *Spanski Enters., Inc. v. Telewizja Polska, S.A*., No. 07-cv-930 (GEL), 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009).  The corporation "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."  *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

While the corporation must make a "conscientious, good faith endeavor" to designate and to prepare a corporate representative pursuant to Rule 30(b)(6), *Eid v. Koninklijke Luchtvaart Maatschappij N.V.*, 310 F.R.D. 226, 228 (S.D.N.Y. 2015), if the corporation does not possess knowledge of the topics in a Rule 30(b)(6) notice, then "its obligations under Rule 30(b)(6 obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization." *Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (internal citations and quotations omitted). Moreover, "a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with reasonable particularity." *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-09371 (KPF) (SN), 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (internal citations omitted).

## III.  DISCUSSION

### A.  Beverley's Rule 30(b)(6) Notice

Beverley argues that Defendants should be compelled to produce witnesses in response to her Rule 30(b)(6) notice. As a preliminary matter, the parties dispute whether Defendants' objections to the Rule 30(b)(6) notice are waived due to untimeliness. Beverley argues that Defendants' objections to the Rule 30(b)(6) notice, served five months after Beverley served them with that notice, are untimely. Doc. 113 at 13–15. In response, Defendants argue that because they were engaged in good faith negotiations to narrow the scope of the Rule 30(b)(6) notice, their objections are not untimely. Doc. 121 at 9–11.

When a party believes a Rule 30(b)(6) notice is overbroad, "pursuing good faith negotiation to narrow the scope of the proposed questioning" can be an adequate response. *Alli v. Steward-Bowden*, No. 11-cv-4952 (PKC) (KNF), 2013 WL 6053481, at *3 (S.D.N.Y. Nov. 7, 2013); *see also Branch v. State Univ. of New York*, No. 18-cv-09516

(AT) (DF), 2020 WL 7230703, at *1 (S.D.N.Y. Dec. 8, 2020) (instructing the parties to narrow the scope of proposed Rule 30(b)(6) topics).  Here, the Defendants actively pursued such good faith discussions over the five-month period.  For example, on July 24, 2023, Defendants' prior counsel sent an email alleging that many of the subparts were overbroad.  *See* Doc. 112-3 at 3.  The parties also discussed the 30(b)(6) requests two separate times in August 2023.  Doc. 121 at 8.  Furthermore, Defendants produced two Rule 30(b)(6) witnesses, Dr. Silvestri and Dr. Yvette Villanueva, who Beverley deposed in September and October 2023, respectively.  Doc. 121 at 8–9.  And on October 13, 2023, Defendants served their official objections, specifically noting that "[w]hile [they] have attempted to discuss the concerns raised herein, and requested that you engage in a discussion regarding the topics at issue, you have declined to do so."  Doc. 120-3 at 2.  Moreover, Rule 30(b)(6), unlike other discovery rules, does not prescribe a timeframe in which the Rule must be followed.  Accordingly, the Court finds that Defendants' objections are timely and are not waived.

Next, Defendants argue that the Rule 30(b)(6) notice seeks information that is not relevant to this action and is unreasonably cumulative.  Doc. 121 at 12–23.  Beverely disputes these characterizations.  Doc. 125 at 10–16.  Each argument is addressed in turn.

### 1. *The Majority of the Topics Are Irrelevant.*

Defendants argue that, with the exception of information about Beverley's role during her employment (category H), the rest of the categories are irrelevant because they seek information for a period of time covering "six to ten years" that is largely after Beverley left H+H in 2018.  Doc. 121 at 14.  In response, Beverley clarifies that her requests about the medical necessity function and medical denials and appeals (categories C and D, respectively) only seek information from "January 1, 2014 through June 2018," Doc. 125 at 11, and asserts that the remaining categories are relevant and appropriately limited in scope.  *Id.* at 13–14.

As described above, a Rule 30(b)(6) deposition notice is still subject to the limitations under Federal Rule of Civil Procedure 26. *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-09371 (KPF) (SN), 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017). And pursuant to Rule 26, discovery requests must seek information that is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party moving to compel bears the initial burden of demonstrating relevance. *Perkins v. Chelsea Piers Mgmt.*, No. 11-cv-8998 (ALC), 2012 WL 4832814, at *1 (S.D.N.Y. Oct. 10, 2012). A plaintiff's conclusory statements that his or her requests are relevant is not enough. *See Bailey v. New York Law School*, No. 16-cv-4283 (ER), 2018 WL 11476375, at *1 (S.D.N.Y. Apr. 30, 2018).

Defendants' argument that categories C and D are overly broad because they span a time range of ten years, Doc. 121 at 14, appears to be based on the language in those requests seeking information from "January 1, 2014 to the present." Doc. 113 at 8. However, in her motion to compel, Beverley clarifies that categories C and D only encompass the period from "January 1, 2014 through June 2018." Doc. 125 at 11. Accordingly, that objection is not applicable, and categories C and D are not otherwise objected to on the basis of relevance, Thus, the Court does not find categories C and D to be irrelevant.

Categories A, B, F, and G, all generally concern information about the Finance Department from "2017 to the present." Doc. 125 at 13–14. Beverley alleges that this information is appropriately limited in scope to "Finance, where the reorganization, restructuring, and budget cuts" causing her termination occurred. Doc. 125 at 13–14. The Court disagrees. As Defendants point out, "Finance," which they construe to refer to "Central Office Finance" covers "multiple current departments and sub-departments." Doc. 121. at 13. In contrast, Beverley only worked in the Revenue Cycle Administration, a single department within Central Office Finance. Doc. 120-3. Accordingly, these categories seek information for a seven-year period largely after the date Beverley was

terminated, and encompass multiple departments she did not work in. Thus, the Court finds that requests A, B, F, and G are not relevant to her claims. *See Perkins*, 2012 WL 4832814 at *1.

Categories I, J, K, and L all seek information about specific units or initiatives in "Finance" from "January 1, 2014 to the present." Doc. 125 at 16. Beverley argues that the categories are limited to three subdivisions[5] in the Finance Department from the past ten years, and that the requests are relevant because she "was associated with" all three subdivisions. Doc. 125 at 15–16. However, Beverley does not explain how she was associated with these subdivisions during her employment, other than alleging they were also supervised by Anantharam and "subject to reorganization that resulted solely in the termination of [her] employment." Doc. 113 at 16. She does not describe why this information is relevant to her claims, especially given that she was terminated in 2018, only four years into the requested ten-year timeframe. *See Perkins*, 2012 WL 4832814 at *1. Accordingly, the Court finds that categories I, J, K, and L are not relevant.

   *2. Categories C and D are Not Described with Reasonable Particularity*

Categories C and D ask for a witness to testify about the medical necessity function and medical necessity denials and appeals from January 2014 to 2018. Doc. 113 at 8–9. The witness would also testify about the identities of employees who performed these roles. *Id.* Defendants argue that categories C and D are not described with reasonable particularity as required by Rule 30(b)(6) because they require a witness to memorize an expansive amount of information. Doc. 121 at 15–16. Beverley responds that Defendants' concerns are speculative. Doc. 125 at 12.

Notices of 30(b)(6) depositions must describe the topics on which testimony is sought with "reasonable particularity." *See Winfield v. City of New York*, No. 15-cv-5236 (LTS) (KHP), 2018 WL 840085, at *4 (S.D.N.Y. Feb. 12, 2018); *see also* Fed. R. Civ. P.

---

[5] These subdivisions are: Clinical Documentation Integrity, Revenue Cycle, and Revenue Integrity. Doc. 125 at 14–15.

30(b)(6).  Courts have considerable discretion in assessing whether topics have been noticed with "reasonable particularity."  In exercising their discretion, courts consider "(1) the nature of the topics; (2) whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and (3) whether a reasonable person reading the notice would understand how to prepare for the deposition."  *Id*. at *6.  If a topic is identified with reasonable particularity, the organization has an affirmative obligation to reasonably prepare the deponent to give knowledgeable answers.  *See Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, No. 10-cv-1391(LGS)(JCF), 2013 WL 1286078, at *2 (S.D.N.Y. Mar. 28, 2013).

Defendants assert that requests that that would require a witness to identify "dozens or hundreds" of employees and their responsibilities over a period of four years, reduce the deposition to a memory test, and are overbroad.  Doc. 121 at 16–17.  Specifically, Defendants posit that categories C and D "request that Defendants produce a witness, or witnesses, who can identify dozens to hundreds of individuals."  Doc. 121 at 16.  The Court agrees that categories C and D are overbroad and require memorizing an unrealistic amount of information pertaining to the identities of other employees.  *Winfield*, 2018 WL 840085 at *6.  Additionally, factual information about the identities of other employees is better sought through a form of written discovery.  *See BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-09367 (JMF) (SN), 2017 WL 11810956, at *1 (S.D.N.Y. Oct. 12, 2017) ("A Rule 30(b)(6) witness should not be required to memorize large amounts of data or facts when that information would be better discovered through another form of discovery.").  Accordingly, the Court finds that topics C and D are not described with reasonable particularity.

### 3.  Category H is Not Unreasonably Cumulative

Topic H requires a Rule 30(b)(6) witness to testify about Beverley's role in the Finance Department during her employment.  Doc. 113 at 9.  Defendants object to

category H on the basis that it is unreasonably cumulative because prior deposition testimony from Anantharam and Beverley already provided the requested information. Doc. 121 at 21–22.  Beverley responds that since the prior depositions were from fact witnesses that did not bind Defendant H+H, topic H is not unreasonably cumulative. Doc. 125 at 15.

The Court is "fully within its discretion to limit 30(b)(6) topics to the extent the deposition topics do not achieve that purpose and are unreasonably cumulative or duplicative." *In re Lifetrade Litig.*, No. 17-cv-2987 (JPO) (KHP), 2023 WL 3244517, at *2 (S.D.N.Y. May 4, 2023).  Indeed, pursuant to Rule 26, the Court "must limit the frequency or extent of discovery" if it determines that "the discovery sought is unreasonably cumulative or duplicative.'"  Fed. R. Civ. P. 26(b)(2).

While and Anantharam and Beverley testified about Beverley's role and responsibilities at their depositions, *see* Docs. 120-6 (Anantharam Deposition), 120-12 (Beverley Deposition),[6] those depositions did not provide binding answers on behalf of Defendant H+H.  Beverley and Anantharam both testified as fact witnesses who were not produced for deposition in response to the Rule 30(b)(6) notice.[7]  As other courts in this Circuit have noted, when a witness is "deposed as an individual and no as a representative of the defendant . . . it is conceivable that the defendant could [later] disavow [the witness's] testimony in summary judgment motion practice or at trial." *Bellinger v. Astrue*, No-cv-06-321 CBA, 2011 WL 4529602, at *4 (E.D.N.Y. Sept. 28, 2011).  Thus, the Court finds that category H—which seeks a witness to provide binding answers on behalf of H+H— is not unreasonably cumulative of prior testimony, which

---

[6] Defendants also note that they produced Beverley's job description.  *See* Doc. 120-13 (functional job description for Assistant Vice President, Physician Advisor).

[7] Anantharam, as Chief Financial Officer of H+H, is a corporate officer.  However, the requirements for Anantharam to be a Rule 30(b)(6) witness were not met, as H+H did not designate him to testify on its behalf nor did Anantharam consent that he could do so.  *See* Fed. R. Civ. P. 30(b)(6).

does not have the same binding effect.  Accordingly, the motion to compel a Rule 30(b)(6) witness in response to category H is granted.

### B.  Beverley's Document Requests From Depositions

Beverley also moves to compel Defendants to produce certain documents identified in the Anantharam deposition (document requests 3, 5, and 7) as well as the one document request identified in the Melican deposition.  Defendants argue that document request 3 and 7 from the Anantharam deposition are irrelevant and disproportionate to the needs of the case, and that they have sufficiently responded to remaining requests.  Doc. 121 at 24–28.  Beverley challenges these representations.  Doc. 113 at 17–18, Doc. 125 at 16–20.

### 1.  *Document Requests 3 and 7 from the Anantharam Deposition are Disproportionate to the Needs of the Case*

Document request 3 from the Anantharam deposition seeks the "Finance Budget for fiscal years 2017, 2018, and 2019 related to the iterative process" about which Anantharam testified.  Defendants argue this request seeks irrelevant information and is disproportionate to the needs of the case.  Doc. 121 at 24.  Beverley argues in her reply that document request 3 is "limited to the Central Office Finance," which is the department in which Beverley worked, and specifically seeks documents relating to the process of making budget cuts.  Doc. 125 at 16–17; Doc. 126-8 at 146:6–25.[8]  Next, document request 7 from the Anantharam deposition pertains to "communications and meetings between Brezenoff and Anantharam" regarding the contract with Huron or retaining Huron to perform revenue management services.  Defendants also allege this request is disproportionate to the needs of this case.  Doc. 121 at 26.  Beverley argues in

---

[8] While Beverley claims that Anantharam "testified about the process for making . . . cuts in Finance, which he called the 'iterative process,'" Doc. 125 at 17, in his deposition, Anantharam actually responded to a question from Beverley's counsel that characterized the process as iterative.

       Q: With regard to the finance budget, were you involved in that iterative process?

       A:  I would be involved in that process.

Doc. 126-8 at 146:6–9.

her reply that that the request is relevant because "the Huron contract resulted in Huron taking over the Revenue Cycle function . . . that allegedly resulted in [her] termination." Doc. 125 at 19.

Beverley as the moving party must "provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, No. 9-cv-601 (ADS), 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009).  In regards to proportionality, this inquiry focuses on the marginal utility of the discovery sought.  *Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 322–23 (S.D.N.Y. 2003).  Proportionality and relevance are "'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088 (RMB), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016).

Notwithstanding Beverley's clarification, document request 3 from the Anantharam deposition is disproportionate to the needs of the case.  Beverley does not explain why the whole of H+H's budget cuts in the Central Office Finance Department between 2017–2019, which are not limited to budget changes associated with the termination of her position, are relevant to her claims.  Therefore, Beverley does not sufficiently carry her burden of showing relevance beyond mere conclusory statements. *See Perkins* 2012 WL 4832814 at *1; *Bailey*, 2018 WL 11476375 at *1.  Given the wide scope of documents sought—any documents related to making budget cuts over three fiscal years—the Court also finds that the document request is not proportional. *Zubulake*, 217 F.R.D at 322–23.

Document request 7, regarding communications between Brezenoff and Anantharam about retaining Huron, is also disproportionate to the needs of this case. Beverley seeks all communications between H+H's interim President and Chief Executive Office regarding whether H+H should retain Huron as a contractor. Defendants represent that this was a "multi-million dollar contract" for H +H, which is a

large organization with "multi-thousand employee[s]."  Doc. 121 at 26.  While Beverley claims the contract allegedly resulted in her termination, Doc. 125 at 19, seeking all communications on the subject of the contract is overbroad and not proportional to Beverley's claims.  *Zubulake*, 217 F.R.D at 322–23.

>    2.  *It is Unclear Whether Defendants' Sufficiently Responded to the Remaining Requests*

Defendants assert that they have produced documents that are responsive to request 5 from the Anantharam deposition, which sought documents showing any "budget lines that were added" to the Finance Department, including "documents regarding all new employees hired," Doc. 121 at 24–25.  They also argue they have produced responsive documents to the request from the Melican deposition, which sought job descriptions for six members of Melican's staff.  *Id*. at 27–28.  Beverley objects on the basis that Defendants' productions are not responsive or are incomplete.  Doc. 125 at 17–20.

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to produce documents ... as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).  Generally, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'"  *Menard v. Chrysler Grp. LLC*, No. 14-cv-325 (VB), 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015) (quoting *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)).  Further, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion."  *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Services, Inc*., 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (internal citations and quotations omitted).  In other words, plaintiffs must cite to specific evidence to challenge a defendant's assertions that no additional responsive documents exist.  *Id.*;

*see e.g., Margel v. E.G.L. Gem Lab Ltd.*, No. 4 Civ. 1514 (PAC), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (noting that moving party did "not cite any specific evidence impugning [the non-movant's] assertions that their production [was] complete" and thus court could not find basis for misconduct).

Defendants initially objected to request 5 from the Anantharam deposition as vague and irrelevant, but without waiving their objections, "contru[ed]" the request to seek the list of all 534 new hires in and promotions into Finance between 2017 to September 11, 2023" and produced the list.  Doc. 121 at 25.  Defendants, in their opposition, thus maintain that they have provided "information responsive to this request."  Doc. 121 at 25.  In response, Beverley argues that the list is not responsive because it does not "indicate whether the new hires or promotions resulted in any new lines being added to Finance," or whether the new hires occupied the same lines, "such as [Beverley's] allegedly eliminated budget line."  Doc. 125 at 18.

Notwithstanding the production of the list of new hires, Defendants have not sufficiently averred that the documents Beverley seeks are outside of their possession or control, or simply do not exist.  *Menard,* 2015 WL 5472724 at *1.  While Defendants argue they produced responsive information, Beverley is entitled to discovery of all nonprivileged, relevant, and proportional matters.  *See* Fed. R. Civ. P. 26(b)(1).  Accordingly, Defendants are directed to provide a declaration that specifically states that that they have provided all of the documents that are responsive to request 5 from the Anantharam deposition, or provide the additional responsive documents within their custody and control.

In response to the request from the Melican deposition, which sought job descriptions for six members of Melican's staff, Defendants produced functional job descriptions for each staff member.  Doc. 121 at 28.  Beverley argues that these functional job descriptions only provide a "generic listing of the duties performed," and seeks more detailed descriptions.  Doc. 125 at 19.  Defendants assert that they have provided

20

"sufficient documents" in response to this request, and argue that Beverley's speculation that other documents exist is "without basis in fact."  Doc. 121 at 27.

Defendants again do not expressly claim that the more detailed descriptions that Beverley seeks do not exist, or are outside of their possession.  Accordingly, they have not sufficiently averred that there are no other responsive documents.  *See Menard*, 2015 WL 5472724 at *1.  Defendants are also directed to provide a declaration that specifically states that that they have provided all of the documents that are responsive to the request from the Melican deposition, or provide the additional responsive documents within their custody and control.

## IV.   CONCLUSION

For the reasons stated above, the motion to compel is GRANTED as to the Rule 30(b)(6) notice concerning category H, but DENIED for the remaining Rule 30(b)(6) topics and the document requests from the Anantharam and Melican depositions. Defendants are directed to produce a declaration regarding document request 5 from the Anantharam deposition and the request from the Melican deposition by May 28, 2024. The Clerk of Court is respectfully directed to terminate the motion, Doc. 111.

It is SO ORDERED.

Dated:    May 13, 2024
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.